212 P.2d 397

In re PACIFIC NAT. LIFE ASSUR. CO.

No. 7512.

Supreme Court of Idaho.

Dec. 9, 1949.

Robert E. Smylie, Atty. Gen., John W. Gunn, Asst. Atty. Gen., James E. Bruce, Jr., Boise, for respondent.

J. L. Eberle, Boise, T. H. Eberle, Boise, B. S. Varian, Boise, Dale O. Morgan, Boise, for appellant.

TAYLOR, Justice.

At the hearing before the Industrial Accident Board the testimony of the general agent and four soliciting agents of the appellant company was heard, and written evidence, consisting of a copy of the company's Rules, Regulations and Underwriting Practices, Rate Book, and the contracts of the general and soliciting agents, was admitted. The respondent, Employment Security Agency, produced the testimony of only one witness, who testified that the appellant's name was printed or lettered on the door of the general agency office below that of the name of the agency but in larger letters. From this the Board made findings of fact and rulings of law as follows:

"Findings of Fact

I

"The Pacific National Life Assurance Company is and was during all of the times involved herein a corporation engaged in the business of life insurance in the State of Idaho. The company operates under what can be classified as the general agency system. Under this system the company enters into contracts with certain individuals who act as general agents of the company to handle the company's business for and in a certain specified territory. The general agent, in order to further the company's business, in turn contacts other individuals to act as the agents of the company, subject to the company's approval of these individuals. The said agents then enter into written agreements with the general agent and with the company. The general agent maintains an office in his territory and acts as a clearing house for the agents. All agents are paid by commission.

\* \* \* \* \* \*

III

"The agreements direct and control the general agent and the agents in the execution of the company's business of selling insurance and contain, among other provisions, such elements of direction and control as follows (emphasis ours):

"(1) The said general agent and the agents *within the territory assigned to them* is (are) granted the authority and powers *and is (are) subject to the terms, conditions, and limitations herein particularly set forth.*

"(2) The general agent and the agents agree to devote their *entire time* to the performance of their *duties* hereunder.

"(3) The general agents and the agents *shall have no power and authority other*

*than herein expressly granted,* and no other or greater powers shall be implied from the granting or denial of powers specifically mentioned herein.

"(4) The territory assigned to the general agents and the agents embraces: (Blank for filling). The above territory is not assigned exclusively nor is the general agent or the agents authorized to solicit in other territory without written permission of the company.

"(5) *No circular, advertisement, or other matter shall be printed, published, or used in any way by the general agent or agents unless the same shall first have been approved by the company in writing.*

"(6) In consideration of the renewal commissions mentioned, the general agents and the agents agree to do everything within their power to maintain the business of the company in force within the territory in which they operate; and they further agree that if they, at any time, take or attempt to induce any agent or agents of the company to discontinue writing insurance for the company, or attempt to induce policyholders to relinquish their policies in the company, *or upon the termination of the contract engage in the service of any other life insurance company in any capacity in the territory in which they have represented the company, or conduct themselves in any other manner so as to injure directly or indirectly, the business of the company,* then and in any such event the renewal commissions due or payable and

any renewal commissions that might subsequently accrue, *and all rights of the general agent or agents under this contract shall be forfeited.*

"(7) Violation by the general agent or agents of any law, rule, or regulation of any state department having charge of the business of insurance in the territory assigned, *or of the rules and regulations prescribed by the company, or default in or violation of the terms and condition of the agreement shall constitute due cause for termination of the agreement at once and without notice;* and the agreement may also be terminated by either party by a notice in writing, delivered personally, or mailed by registered mail to the other party at the last known address, at least thirty days before the date fixed in such notice for such termination.

IV

"The agreements further provide that both the general agent and the agents, in order to keep the agreement in force, must produce a certain minimum amount of insurance sales during each quarter of the year.

V

"From the oral testimony of the witnesses, the Board finds the following facts: The company supplies free of charge both the general agent and the agents with all of the necessary forms and stationery used in their business. The company owns a

part of the office equipment in the general agency. The approved advertising material used by the agents is paid for by the Pacific National Life Assurance Company and the title and slogan of the company is prominently displayed. In actual practice the general agent and the agents are limited to the territory assigned by the company and cannot solicit insurance in any other territory without approval by the company. The company pays all of the expenses incurred by the general agent and other agents in attending annual conventions of the company, at which time they are informed of new policies and rules of the company. The general agent receives, in addition to his commissions, a sum of money from the company to be used as reimbursement for office expenses incurred in the maintenance of an office for the general agency.

## VI

"As an ultimate fact from the foregoing findings and from the whole record, the Board finds that the Pacific National Life Assurance Company does in fact exercise such direction and control over its general and other agents in Idaho as to constitute their employment covered within the meaning of the Employment Security Law.

"The Board makes the following:

### "Rulings of Law

#### I

"The appellant has failed under Chapter 269, Session Laws of 1947, Section 16(d), to sustain its burden of showing that the general agent and other agents have been and will continue to be free from control and direction by the Pacific National Life Assurance Company over the performance of their services both under their contract and in fact.

#### II

"Under the terms of the agreements in evidence, the appellant has the right to exercise such control and direction over the general agent and the agents as to bring them within the statutory classification of covered employees." (The italics is by the Board.)

With respect to finding V, it appears from the evidence on which the finding is based that at the annual conventions the agents are informed of new policies and *rates*, not rules. As to rules, the agents testified that they had received no rules or instructions, oral or written, additional to the rule book during the period of their contracts (which were of five, four, three and two years' standing at the time of the hearing) either from the company or the general agent. This finding should also be corrected with regard to the statement that "The general agent receives, in addition to his commissions, a sum of money from the company to be used as reimbursement for office expenses." The general agent, the only one who testified on this point, while he made a statement that the additional sum was used by him for office expense or the development of the agency,

he made it clear by his further testimony on the subject that the additional sum was a bonus dependent entirely upon whether his agency qualified for the bonus by producing a sufficient volume of business for the company, and that he paid all of his office and other expenses. In other words, finding V is not supported by the evidence in these particulars.

It is also to be noted that the Board makes no finding with respect to the freedom of the agents from control and direction in connection with the performance of the services they are required to render under their contracts. The evidence is without conflict to the effect that: They are not required to, and do not, make reports to the company or the general agent; they furnish their own means of transportation; pay their own expenses; no moneys are advanced to them; they work on days and hours suitable to themselves; within their allotted territory they go where and when and contact whom they please; if they accept notes for premium payments they do so upon their own judgment and at their own risk; they keep their own books of account and pay their own taxes; and if they employ help they pay their own social security, unemployment contributions, and withholding taxes; no part of their commissions are withheld under the Internal Revenue Act; they are not given any direction nor are they subject to any control as to the manner or method used by them in soliciting applica-

tions for insurance; and there is no supervision provided for or exercised over these agents either by the company or the general agent. The foregoing also applies to the activities of the general agent. He is not supervised by the company, and is not required to make reports. He may maintain an office or not as he chooses. None of the agents are required to attend the annual conventions.

It must also be remembered that life insurance agents are subject to licensing and other regulatory provisions of the state law. In this connection, it is noted that a portion of the rules of the company and of the provisions of the agency contracts are intended to secure an observance of these statutory requirements by the agents. Coupled with these requirements are others, general in their nature, as to the conduct of the agents, that is, provisions which are intended to protect the company from acts on the part of the agents which would be injurious to the reputation or business of the company. To enforce these provisions of the contracts the company must rely upon its power to terminate the agreement according to its terms.

The applicable provisions of the Employment Security Law are:

"(a) The term 'covered employment' means an individual's entire service, including service in interstate commerce, performed by him for wages or under any

contract of hire, written or oral, express or implied, except—

\* \* \* \* \* \*

"(d) Services performed by an individual shall be deemed to be covered employment, irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that such individual has been and will continue to be free from control and direction in connection with the performance of such services, both under his contract for the performance of such services and in fact." I.C. § 72-1316.

Another provision defines "wages" to include commissions and bonuses. Section 72-1328. The 1949 amendments are not involved here.

The evidence being undisputed and without substantial conflict, it becomes a question of law for this court, as to whether it will support the conclusion reached by the Board. I.C. § 72-1368(i). Horst v. Southern Idaho Oil Co., 49 Idaho 58, 286 P. 369; Rabideau v. Cramer, 59 Idaho 154, 81 P.2d 403; Williamson v. Texas Owyhee Mining & Development Co., 62 Idaho 707, 115 P.2d 749.

We are in accord with the view quite generally expressed that by the language used in the subsections above quoted the legislature intended to broaden the scope of covered employment as compared to that comprised in the common law master and servant relationship, and that what constitutes covered employment must be determined by the terms of the act and the facts of the particular case.

Specifically, then, the question is, Were the appellant's agents "free from control and direction in connection with the performance of such services"? The nearest approach to control and direction appears to be the two provisions; (1) requiring the agent to devote his entire time to the performance of his duties under the contract; and (2) for termination for cause, and upon 30 days notice by either party. These are indicia of varying importance depending on the particular case. As to the first, the Supreme Court of California well said:

"The question whether or not one is pursuing an independent occupation does not depend upon whether he is serving one person or many persons, but whether in the pursuit of his occupation he is acting upon his own behalf or as the servant of another." Fidelity & Casualty Co. v. Industrial Accident Commission, 191 Cal. 404, 216 P. 578, 581, 43 A.L.R. 1304.

It must be obvious that one can be subject to control or free from control in the performance of his services whether rendered under one contract or many, or whether for full time or part time service.

The right to terminate the agreement at will is regarded as an important factor in a determination of the relationship created by it. But is is not conclusive factor. Joslin v. Idaho Times Pub. Co., 56

Idaho 242, 53 P.2d 323; Bohanon v. James McClatchy Pub. Co., 16 Cal.App.2d 188, 60 P.2d 510; Mountain Meadow Creameries v. Industrial Accident Comm., 25 Cal. App.2d 123, 76 P.2d 724; Houdek v. Gloyd, 152 Kan. 789, 107 P.2d 751; 56 C.J.S., Master and Servant, § 3(5), p. 56.

The right to control and direct the performance of the service is the fundamental characteristic of covered employment, and is quite different from the right to control and direct the result to be accomplished by the performance of the contract.

"(1) A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

"(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." 1 Restatement Agency 11.

"Those rendering service but retaining control over the manner of doing it are not servants. They may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal; or they may be persons employed to accomplish or to use care to accomplish physical results, without fiduciary obligations, as where a contractor is paid to build a house. An agent who is not subject to control as to the manner in which he performs the acts that constitute the execution of his agency is in a similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical results." 1 Restatement Agency 485.

" 'Under the Georgia statute and decisions, the test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract.' " Young v. Demos, 70 Ga.App. 577, 28 S.E.2d 891, at page 893.

The provisions of the contracts for: full time; right to terminate; compliance with licensing and other requirements of the state law; protection of the interests of the company from fraud or other unauthorized acts of the agent; and for forfeiture, are all aimed at the accomplishment of the ultimate result or purpose of the contracts, namely the promotion of the

company's business. They are not intended to provide the company with the right to control and direct the agents in the performance of their agreements. The parties have so construed these provisions. No attempt has been made to control or direct the agents as to the manner or means by which the ultimate result is to be accomplished.

"The plaintiff does not exercise supervision or control over any of its agents with respect to the place and manner in which they conduct their business operations or the time they devote to them, but the company has an interest in the development of territory, and if any agent neglects his territory to the injury of the company's business, the only remedy of the company is to terminate the contract." Northwestern Mut. Life Ins. Co. v. Tone, 125 Conn. 183, 4 A.2d 640, 642, 121 A.L.R. 993, at page 997.

Respondent urges that the decision of this court in Continental Oil Co. v. Unemployment Comp. Div. of Industrial Accident Board, 68 Idaho 194, 192 P.2d 599, 604, is controlling here. An examination of the facts set out in that case reveals the cases are not parallel. In the Continental Oil case the representative was required to "solicit orders and make deliveries to the trade *according to instructions from the Company*," to " 'fill barrels and other packages from bulk stock, haul empty packages, make shipments and transfers as directed;' that the 'representatives' will *satisfactorily transact* the business in their charge and *make reports,* all in accordance with the agreement and *instructions* from the *division manager; 'Collect and remit promptly for all sales made;' "* These and other detailed requirements indicate that control and direction of performance was retained by the company.

Respondent has also emphasized the case of Industrial Comm. v. Northwestern Mutual Life Ins. Co., 103 Colo. 550, 88 P.2d 560, 562 (two justices dissenting). Although the decision is based upon a provision like our own, at the time it was rendered the Colorado statute was quite different from ours. In addition to the requirement of freedom from control and direction over the performance of the service, one claiming the service was not covered must also show that:

" '(b) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

" '(c) Such individual is customarily engaged in an independently established trade, occupation, profession, or business.' "

Many of the other jurisdictions cited by respondent, having the same statutory provisions, followed the lead of Colorado. Life & Casualty Ins. Co. of Tenn. v. Unemployment Compensation Comm., 178 Va. 46, 16 S.E.2d 357; Singer Sewing Mach. Co.

v. Unemployment Compensation Comm., 167 Or. 142, 116 P.2d 744, 103 P.2d 708, 138 A.L.R. 1398, note 1413; Creameries of America v. Industrial Comm., 98 Utah 571, 102 P.2d 300; First Nat. Ben. Soc. v. Sisk, 65 Ariz. 1, 173 P.2d 101; Unemployment Compensation Comm., v. Jefferson Standard Life Ins. Co., 215 N.C. 479, 2 S.E.2d 584; McKinley v. R. L. Payne & Son, 200 Ark. 1114, 143 S.W.2d 38; Park Implement Co. v. Review Board, 109 Ind.App. 538, 36 N.E.2d 985. North Dakota (with a different statute) expressly refused to follow Colorado, the court saying, "we are not persuaded by their reasoning." Mutual Life Ins. Co. of New York v. State, 71 N.D. 78, 298 N.W. 773, 778, 138 A.L.R. 1115. The Utah court reached a different conclusion in Stover Bedding Co. v. Industrial Comm., Utah, 107 P.2d 1027, 134 A.L.R. 1006. This illustrates the proposition that each case must be decided upon its facts and the applicable law. Most of the other cases cited by respondent are distinguishable on their facts from the present case.

Construing a statute more nearly like our own, the Iowa court said: "The same is true of salesmen who sell upon commission and without direction or control with respect to the details of the performance of their work. Such workers are the masters of their own time and efforts. The commissions in many states have excluded insurance agents from coverage, and ten or more states by provision of statute have excluded therefrom various types of insurance solicitors and agents. This is the ruling also of the Bureau of Internal Revenue." Meredith Pub. Co. v. Iowa Employment Security Comm., 232 Iowa 666, 6 N.W.2d 6, 15.

The Idaho statute has likewise been amended to exclude insurance agents remunerated by commission.

We reach the conclusion that the service rendered by appellant's agents was not covered employment within the Employment Security Law. Joslin v. Idaho Times, supra; Idaho Times v. Industrial Accident Board, 63 Idaho 720, 126 P.2d 573; In re General Electric Co., 66 Idaho 91, 156 P.2d 190; Young v. Demos, 70 Ga. App. 577, 28 S.E.2d 891; In re Radio City Music Hall Corp., 262 App.Div. 593, 31 N.Y.S. 284; State v. Superior Court, 22 Wash.2d 811, 157 P.2d 938, 160 A.L.R. 692 and note 713; 56 C.J.S., Master and Servant, §§ 2, 3, pages 29-62; 48 Am.Jur. 522-528.

It should also be noted that the contracts here involved are not questioned on the ground that they were drawn with a purpose to escape liability on the part of the company. On the contrary they were made in good faith to define a bona fide relationship of independent contractor-contractee. In re General Electric Co., 66 Idaho 91, 156 P.2d 190.

The order of the Board is reversed. Costs to appellant.

HOLDEN, C. J., and GIVENS, PORTER and KEETON, JJ., concur.