In the Matter of ARLENE L. SMITH, Doing Business as ARLENE LOUISE STUDIO, Appellant. MARTIN P. CATHERWOOD, as Industrial Commissioner, Respondent.

Third Department, December 15, 1966.

*A. Harvey Radden* for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Samuel A. Hirshowitz, Irving Jorrisch* and *Samuel Stern* of counsel), for respondent.

REYNOLDS, J. This is an appeal by the employer from a decision of the Unemployment Insurance Appeal Board holding her liable for unemployment contributions pursuant to the then applicable provision of section 560 of the Labor Law.

The question presented here is whether the board could properly find that appellant, the operator of a photography studio, had two or more employees between April 17, 1957 and October 1, 1959. Appellant concedes that she had one employee, Stanley Friedman, a photographer, but disputes that various other photographers hired to cover particular weddings were her employees within the meaning of section 560.

A universally applicable test to determine the existence of an employer-employee relationship in a given case is not readily available. In certain cases a test of control has been utilized with the decisive question being who has the right to direct what shall be done and the manner of performance (e.g., *Matter of Barnaba Photographers Corp.* [*Miller*], 263 App. Div. 915, affd. 289 N. Y. 587; *Matter of Miller* [*Miller*], 262 App. Div. 385; *Matter of Radio City Music Hall Corp.* [*Miller*], 262 App. Div. 593). Of course, it is recognized that some control is always reserved by the employer but if the contractor has the right to do the work according to his own initiative as long as he complies with the contract no master and servant relationship is held to exist. Thus it has been held that a member of an orchestra was not an employee of the restaurant where he was playing and that the orchestra leader was an independent contractor (*Matter of Miller* [*Miller*], *supra*); that special theatrical acts hired by a theatre were not employees (*Matter of Radio City Music Hall Corp.* [*Miller*], *supra*); and that professional models hired by a photographer were independent contractors (*Matter of Barnaba Photographers Corp.* [*Miller*], *supra*). In addition to criteria of control the courts have buttressed their holdings by such factors as a lump-sum payment for the services rendered (*Matter of Radio City Music Hall Corp.* [*Miller*], *supra*) and the professional qualities thereof (see *Matter of Barnaba Photographer Corp.* [*Miller*], *supra*).

There are other cases, however, where it would seem using the criteria of control alone that a finding of an employer-employee relationship could not be upheld and yet such a finding has been sustained (*Matter of Morgenstein* [*Corsi*], 274 App.

Div. 866; *Matter of Parsons Sanitarium* [*Corsi*], 271 App. Div. 859). Thus an attorney who was employed by another lawyer to serve and file legal papers, argue motions, and make investigations, and who worked fixed hours for a fixed wage subject to withholding deductions, was held to be an employee (*Matter of Morgenstein* [*Corsi*], *supra*). Similarly physicians who were members of a board of directors and who received fixed monthly sums for work in various departments of a sanitarium were held to be employees (*Matter of Parsons Sanitarium* [*Corsi*], *supra*). Finally, truck drivers who owned their own vehicles were held to be employees where the contract referred to appellant as an employer (*Matter of Gailey Coal Co.* [*Miller*], 263 App. Div. 1023). In each of these cases the court found an employment relationship without reference to control of the details of the work. However, in each the nature of the work was such that control of the details would not have been practical and at the same time the other normal elements of an employment relationship clearly existed.

At best it would appear that a number of criteria are thus relevant and must be balanced against each other with no single factor alone being determinative (*Matter of Chauffeurs Unlimited* [*Catherwood*], 24 A D 2d 1044). Each case, therefore, must be decided on its own particular facts.

Here the record reveals that the studio obtained the names of the photographers involved through mailed literature, telephone calls, and the recommendations of other photographers. So-called "candid wedding men" formed a kind of pool, and the same men were used by several studios. The outside photographers used their own cameras for weddings, but the studio either supplied or paid for the flashbulbs and film utilized. The studio, however, developed the film and handled all further negotiations with the customer. Formal studio portraits were taken by the owner of the studio, but ordinary flash pictures were taken at the studio by the outside photographers. The studio did not indicate the hours a photographer was required to stay at a wedding, but an average job it was assumed lasted about five hours. The photographers were paid a going rate, which generally varied from $20 to $25. If the work was unsatisfactory, however, the photographer was paid only $10 and any decision as to the quality of the work was made by the studio. The customer paid the studio directly and not the photographer and the photographer was in turn paid when he returned the film whether or not the customer had paid. The studio did not make any deductions for withholding taxes or social security. As a matter of ethics, a photographer would not book another

wedding for himself while he was working at a wedding for the studio.

On this state of the record there is no evidence to support the decision of the board that the employer reserved any right to control the manner in which the pictures were taken. There is absolutely no indication that she reserved the right to give any directions as to the persons to be photographed, the poses to be arranged or found, the number of pictures to be taken, the number to be taken of each person or the manner in which the pictures were taken. Because of the nature of the work, these details were necessarily left to the individual photographer, to be decided in the context of his ability and experience. Thus in their relationship with the studio, the outside photographers as the individuals in *Matter of Miller (Miller), (supra)*; *Matter of Radio City Music Hall Corp. (Miller), (supra)*; and *Matter of Barnaba Photographers Corp. (Miller), (supra)*, were selling their services as skilled professionals, services which did not lend themselves to control by the employer. Nor did the outside photographers work for wages, being hired and paid by the job, or were any of the other elements of a normal employment relationship present which would bring the case within the rationale of *Matter of Morgenstein (Corsi), (supra)* and *Matter of Parsons Sanitarium (Corsi), (supra)*. (See *Powell* v. *Employment Security Comm.*, 345 Mich. 455; cf. *Matter of Chauffeurs Unlimited [Catherwood], supra.*) Accordingly the decision of the board must be reversed.

The decision should be reversed.

GIBSON, P. J., HERLIHY, AULISI and STALEY, JR., JJ., concur.

Decision reversed, with costs.