■ In the Matter of CONCOURSE OPTHALMOLOGY ASSOCIATES, P. C., Appellant. LILLIAN ROBERTS, as Commissioner of Labor, Respondent. — Appeal from a decision of the Unemployment Insurance Appeal Board, filed May 6, 1981, which assessed the employer for contributions due for the audit period from April 1, 1976 through December 31, 1978. Appellant is a professional corporation organized in 1971 for the purpose of practicing opthalmic surgery. It employs some 10 or 11 people, including nurses, receptionists and secretaries, who are concededly employees. Appellant also utilizes the services of certain opthalmologists, optometrists and a medical photographer who were found by the board to be employees rather than independent contractors. The board concluded that appellant was liable for contributions on the remuneration paid to this latter group during the audit period from April 1, 1976 through December 31, 1978 and this appeal ensued. The opthalmologists in question performed services on appellant's premises pursuant to an agreed upon schedule. The standard fee established for services rendered was set by appellant although the opthalmologists had discretion to lower the fee. During the course of treatment the opthalmologists used appellant's examining rooms and medical equipment. The billing of patients, collection of fees and completion of insurance and Medicare forms were handled by appellant. The opthalmologists received from appellant 50% of the fee collected from a patient for the services they rendered. The scheduling of appointments was done by a receptionist employed by appellant. Appellant's relationship with the optometrists in question is essentially similar to its relationship with the opthalmologists. While appellant provides the optometrists with examining rooms and large medical equipment, smaller medical equipment is provided by the optometrists themselves. In addition, optometrists receive not only 50% of the fees collected by appellant but also a per diem fee. The scheduling of patients, billing and collection of fees are handled by appellant in the same manner as for the opthalmologists. The medical photographer performs services for appellant usually one day a week on a scheduled day at appellant's premises. Her work involves taking photographs of patients' retinas with a camera and film provided by appellant. She develops the photographs at her home. Payment is calculated on an hourly basis plus a certain amount per patient. This payment is received by the medical photographer from appellant. It is well established that in determining whether an employer-employee relationship exists, no single factor alone is conclusive and each case must be decided on its peculiar facts (*Matter of Wells* [*Utica Observer-Dispatch & Utica Daily Press — Roberts*], 87 AD2d 960; *Matter of Publications Data* [*Ross*], 78 AD2d 747). While there is some evidence to support a contrary conclusion, we are of the view that upon examination of the entire record there is substantial evidence to support the board's determination that the individuals in question were employees of

appellant and, therefore, the decision should be affirmed (see *Matter of Villa Maria Inst. of Music [Ross]*, 54 NY2d 691; *Matter of Foundation for Open Eye [Ross]*, 86 AD2d 931). Decision affirmed, without costs. Sweeney, J. P., Main and Yesawich, Jr., JJ., concur.

Mikoll and Levine, JJ., dissent and vote to reverse in the following memorandum by Levine, J. Levine, J. (dissenting). In determining whether an employer-employee relationship exists for unemployment insurance purposes, New York very early adopted the basic common-law distinction between an employee and an independent contractor based upon control, namely, whether one who undertakes to achieve an agreed result also agrees to accept the directions of his employer as to the manner in which the result shall be accomplished, as opposed to agreeing to achieve a certain result without being subject to the orders of the employer as to the means which are used (see *Matter of Morton,* 284 NY 167, 172). Although later cases have emphasized that the existence of an employment relationship is generally a factual issue (see, e.g., *Matter of Smith [Catherwood]*, 26 AD2d 459, 461), only recently did the Court of Appeals, in reversing an appeal board determination of employment, reconfirm that the critically significant issue is whether the alleged employer "exercises control over the results produced by * * * [the alleged employee] or the means used to achieve the results" (*Matter of 12 Cornelia St. [Ross]*, 56 NY2d 895, 897). There is not a scintilla of evidence, nor indeed even a finding by the administrative law judge whose decision was adopted by the board, that appellant exercised the right of control either over the results produced or over the means to achieve those results used by the professional opthalmologists and optometrists whose part-time services are at issue in the instant case. They determined the course of treatment of individual patients, whether there would be any follow-up visits, and generally saw the same patients on all subsequent appointments. There was no evidence in the record to indicate that appellant supervised their work in any way or reviewed charts or files to monitor the appropriateness or effectiveness of the services rendered. As one of the opthalmologists whose status was in question testified, they functioned completely autonomously. Additionally, the uncontradicted evidence established factors similar to those presented in *Matter of 12 Cornelia St. (Ross) (supra)*, which negated the existence of an employer-employee relationship. Thus, these professionals determined the days and hours they spent at appellant's office and could cancel their appearances, if necessary. Remuneration was primarily on a per patient, split fee basis. They maintained their own individual malpractice insurance and operated substantial outside practices. No deductions were taken from their compensation for income or Social Security taxes. And they treated patients specifically referred to them under the same basic arrangements. The administrative law judge based his determination upon appellant's "control of scheduling, billing, fee setting and collections." These factors are, however, either irrelevant to the test of right to control the results or the means to produce such results or are unsupported by the evidence. Single billing and collections is as consistent with the status of independent contractor as it is with that of employee, and in any event, the testimony was that the billing procedure was adopted as a matter of convenience and to avoid confusing patients with one bill for office expenses and another for services. As to fee setting, the uncontradicted evidence was that fee schedules were arrived at by mutual agreement in conformity with the "going rate" for such services in the area and were subject to reduction by the treating professional if in his judgment it was excessive in any individual case. The fees of optometrists for contact lens fitting (one of the two services they performed at appellant's office) were set completely by them. Finally, the fact that

appellant's staff personnel scheduled patient appointments should not be decisive here. Any other arrangement for opthalmologists and optometrists working part time, as little as one afternoon a week, would not have been feasible; and as applied to each practitioner, scheduling was determined by his availability, which only he controlled. Concededly, the nature of the services performed even by employee-professionals prevents close control over the details of their work. However, no such practical difficulty exists regarding "control over the results produced", an alternative basis to find employment status (*Matter of 12 Cornelia St. [Ross], supra*). A special, looser test for professionals is not supported by the case law. Thus, in *Matter of Gulack (Catherwood)* (27 AD2d 759), perhaps the leading case on employee-professionals, we noted that there was "also proof that appellant exercised supervisory control over [the attorney employee's] activities in his behalf, that appellant had the absolute right to terminate the relationship, and that [the attorney employee] did not maintain a separate office for the practice of law" (see, also, *Matter of Foundation for Open Eye [Ross]*, 86 AD2d 931). Nor does there appear to be any particular need to insure these professionals, primarily otherwise occupied in outside private practices, against loss of their engagements to render the part-time services involved in the instant case. The foregoing similarly applies to the part-time medical photographer, who was paid partly on a per patient basis and performed most of her work at home, using her own developing equipment at her own expense. Since in all instances there was lacking any supervision, direction or control, or other element of a normal employment relationship, the decision of the appeal board should be reversed (see *Matter of Smith [Catherwood]*, 26 AD2d 459, 462, *supra*).