■ In the Matter of the Claim of JOAN M. Fox, Respondent. JAMES WHALEN, Doing Business as WHALEN'S SERVICE, Appellant; LILLIAN ROBERTS, as Commissioner of Labor, Respondent. —Mikoll, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed January 14, 1985, which ruled that claimant was entitled to receive benefits.

James Whalen challenges the finding by the Unemployment Insurance Appeal Board that claimant was his employee on the ground that it is unsubstantiated by the evidence. It is his contention that claimant was an independent contractor. Whalen further contends that the Board erred in failing to accord collateral estoppel effect to a ruling of the National Labor Relations Board (NLRB) which found that claimant and other drivers similarly situated were independent contractors.

Addressing the collateral estoppel argument first, we conclude that the NLRB ruling does not estop the Board from determining whether Whalen is liable for unemployment insurance contributions. The burden of proof rests on the proponent of collateral estoppel. This burden has not been met here. The Commissioner of Labor and claimant were not parties to the prior proceeding, nor were they in privity with a party in the NLRB hearing. Their interests thus were not addressed in the prior action. For this reason, collateral estoppel is inapplicable (see, Ryan v New York Tel. Co., 62 NY2d 494, 500-501).

The facts underlying the instant matter are as follows. Whalen operates Whalen's Service, a photographic film pickup and delivery service. In March 1983, Whalen's Service was engaged by Carhart Photo to supply such services for Carhart. Prior to this time, Carhart had employed its own staff of drivers. Whalen interviewed Carhart's former drivers and

retained some of them under a written contractual agreement which designated the relationship between the parties as that of contractee and independent contractor. Each driver supplied his own vehicle, which was leased to Whalen. The insurance coverage which each driver carried had to conform with Department of Transportation requirements. Whalen was required by law to be named as an additional insured under the drivers' policies. The drivers operated under Whalen's permit. Whalen imposed no other requirements of his own as to insurance.

The agreements reached between Whalen and his drivers, including claimant, were individually negotiated and varied in remuneration paid, from 21 cents per mile to $1.89 per mile, depending on road conditions. Claimant received 35.48 cents per mile in accordance with her contract. Drivers submitted vouchers weekly to Whalen, in any form they deemed appropriate, which specified their mileage in a given week. Claimant used a voucher made available by Whalen. Whalen took no payroll deduction from the mileage vouchers, imposed no work rules or code of conduct, gave no training, conducted no meetings and required no uniforms. No designating signs were required on the vehicles. The drivers were free to substitute anyone they wished for their routes without informing Whalen. In fact, claimant had no driver's license when she negotiated her agreement with Whalen. Her husband or some other driver did her route for her.

Carhart gave Whalen a list of the stores to which it delivered and from which it picked up film; in turn, these were given to the drivers with whom Whalen had negotiated. There was no system of dealing with complaints against drivers. Problems involving delivery were handled by each driver personally. However, under the contract, Whalen could discontinue a driver's services for failure to supply the negotiated service. All drivers were free to offer like services to other delivery services, and did so. Claimant delivered only for Whalen. Each driver set up his own schedule of pickups and deliveries. Claimant continued the same schedule she had followed while engaged by Carhart; however, this was at her own option since Whalen did not prescribe a specific schedule and neither of them had discussed the subject at any time. When Carhart lost or gained a store, it notified Whalen, who in turn informed the servicing driver. New stores were offered by Whalen to drivers, who accepted or declined to take them at their option. Claimant picked up some other stores along her route herself and told Whalen about them. Her mileage

remained the same, since these stores were along her route of travel. On the advice of his attorney, Whalen carried workers' compensation coverage on the drivers as a precautionary measure.

It hardly bears repetition that a finding of an employer-employee relationship "must rest upon evidence * * * [of] control over the results produced * * * or the means used to achieve the results" *(Matter of 12 Cornelia St. [Ross],* 56 NY2d 895, 897). Applying that test here, we conclude that claimant was not an employee. The Board's decision is not supported by substantial evidence and should be reversed. Several facts adopted by the Board, which were deemed supportive of an employer-employee relationship, simply do not buttress that conclusion when viewed in light of the record as a whole *(see, Matter of Di Maria v Ross,* 52 NY2d 771).

The Board found that claimant was given a list of stores to service and did not solicit any on her own. Both facts are supported by the record, but the record also discloses that nothing prevented claimant from soliciting business, as other drivers did. Claimant testified that neither her contract nor any instruction from Whalen stated that she could not solicit her own business. There is nothing significant or indicative of exercise of control by Whalen in dividing up the stores given him by Carhart among the drivers with whom he signed contracts. The insurance requirements relied on by the Board as evidence of control also do not lend support to that conclusion. The insurance conditions were imposed by law and are, therefore, not reflective of control *(see, Matter of New York & N. J. Freightways [Ross],* 55 AD2d 989, 990).

The Board concluded that claimant was required to make pickups and deliveries at certain times. Her own testimony disclosed that Whalen never discussed her schedule with her or told her to perform in a certain way. She concluded herself that her schedule should be the same as when she drove for Carhart. The evidence indicates that drivers made their own arrangements and changed them in conjunction with store owners without any control being exercised by Whalen as to this matter. The factual situation leads, as a matter of law, to the conclusion that the relationship between Whalen and claimant was not one of employer-employee *(see, Matter of Green Engraving Corp. [Roberts],* 95 AD2d 904; *Matter of Sirotkin Travel [Ross],* 63 AD2d 1095; *Matter of Smith [Catherwood],* 26 AD2d 459).

The instant case is unlike *Matter of Wells (Utica Observer-*

*Dispatch & Utica Daily Press—Roberts)* (87 AD2d 960, *affd* 59 NY2d 638) and *Matter of Di Martino (Buffalo Courier Express Co.—Ross)* (89 AD2d 829, *affd* 59 NY2d 638), both of which dealt with persons engaged in making deliveries. In both cases, the employer exercised sufficient control over the drivers to give rise to an employer-employee relationship. The drivers were required to adhere to a set schedule and deliveries were to be performed at set times. No such elements of control exist in the instant case. Accordingly, the Board's decision ruling that claimant was entitled to benefits must be reversed.

Decision reversed, without costs, and objection to claimant's entitlement to benefits sustained. Weiss, Mikoll and Levine, JJ., concur.

Mahoney, P. J., and Casey, J., dissent and vote to affirm in a memorandum by Casey, J. Casey, J. (dissenting). Since there is substantial evidence in the record to support the Board's decision, it should be affirmed *(see, Matter of Di Martino [Buffalo Courier Express Co.—Ross],* 59 NY2d 638). Accordingly, we dissent.