908 P.2d 560

Lisa C. JOHNSON, SSN: 502–72–1863, Claimant–Respondent,

v.

IDAHO CENTRAL CREDIT UNION, Employer, Defendant–Appellant,

and

State of Idaho, Department of Employment, Defendant–Respondent.

No. 21658.

Supreme Court of Idaho, Pocatello, September 1995 Term.

Dec. 18, 1995.

Service, Gasser & Kerl, Pocatello, for appellant. Ron Kerl argued.

Idaho Legal Aid Services, Inc., Pocatello, for respondent, Lisa C. Johnson. Angela Jensen argued.

Alan G. Lance, Attorney General; Jane M. Newby, Deputy Attorney General, Boise, for respondent, Department of Employment.

JOHNSON, Justice.

This is an unemployment benefits case. We conclude that there is substantial and competent evidence to support the Industrial Commission's finding that the claimant is eligible for unemployment benefits because she was discharged for reasons other than misconduct.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

Lisa Johnson (Johnson) was employed by the Pocatello branch of the Idaho Central Credit Union (ICCU) from June 19, 1991 until July 13, 1993. Linda Waters (Waters) was the Pocatello branch manager and Johnson's immediate supervisor. Approximately one week before Johnson's last day of employment, Waters met with ICCU's human resource director and its president to review the operation of the Pocatello branch. During this meeting, the managers decided to terminate an employee (the other employee) at the Pocatello branch. They also discussed terminating Johnson, but decided not to do so because they believed that she had the capacity to make the necessary improvements and because the branch would be understaffed if the other employee and Johnson were both terminated.

On July 12, 1993, Waters fired the other employee. The same night, the other employee called and told Johnson that the other employee had been "let go" because of her attitude. At this time, Johnson believed that she was next in line for the other employee's position and expected to be given that position the next day.

At the beginning of the work day on July 13, 1993, Waters held a meeting with the staff at the Pocatello branch. She announced that the other employee had been fired and that a person from another branch would take the other employee's position. Johnson found this strange because she believed that Waters would offer her the other employee's former position.

After the staff meeting, Johnson began working. In a short time, Waters told Johnson that she needed to talk to her. Waters had another employee bring her own cash drawer and take Johnson's place. Usually employees do not bring their own cash drawers to replace other employees unless the replaced employee will be gone for a lengthy period. Johnson testified in this proceeding that this alerted her that "something was up." It was not a common practice to be called into Waters's office, and it was not time for a regular evaluation of Johnson's performance.

Waters and Johnson went into Waters's office, closed the door, and met for about forty-five minutes. Waters explained to Johnson that there were three areas in which Johnson had to improve. She told Johnson that she had until the end of the month to improve or else she would be fired. Waters offered to help Johnson find another job by giving her referrals and time off for interviews. Johnson testified in this proceeding that she was crying uncontrollably and that Waters said, "Do you want me to let you go?" Johnson testified that she said, "You can let me go now." In a few minutes Johnson said, "I'm going home," left a key on Waters's desk, and left the building.

Johnson made a claim for unemployment insurance benefits on July 13, 1993. In her separation statement, she claimed that she had been discharged. In its employer's statement, ICCU claimed that she had quit. The department of employment (the department) determined that Johnson had quit without good cause and was therefore ineligible for benefits. Johnson made a request for redetermination. The appeals examiner upheld the department's decision and found Johnson ineligible. Johnson appealed the redetermination decision to the Industrial Commission (the Commission). The Commission remanded the decision to the appeals examiner because portions of the hearing were not recorded as required by I.C. § 72–

1368(f) (Supp.1995). After the second hearing, the appeals examiner again determined that Johnson was ineligible for benefits. Johnson appealed this decision to the Commission. The Commission reversed the appeals examiner's decision and determined that Johnson was eligible for unemployment insurance benefits, finding that Johnson was discharged but not for misconduct in connection with her employment. ICCU appealed the Commission's decision to this Court.

## II.

## THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE FINDING THAT JOHNSON WAS DISCHARGED.

ICCU asserts that there is not substantial and competent evidence to support the Commission's finding that Johnson was discharged and did not voluntarily quit her job. We disagree.

A claimant is ineligible for unemployment insurance benefits if the claimant voluntarily quits without good cause or is discharged for misconduct. I.C. § 72–1366(e) (Supp.1995). The first step in proving eligibility, therefore, is establishing whether an employee quit or was discharged. The second step in proving eligibility depends upon the outcome of the first step. If the employee quit, the second step is establishing whether it was with good cause. If the employee was discharged, the second step is establishing whether it was for misconduct.

The test for determining whether an employee was discharged is "whether sufficient words or actions by the employer would logically lead a prudent ... [person] to believe ... [the person's] tenure has been terminated." *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 334–35, 563 P.2d 54, 58–59 (1977); *Knee v. Sch. Dist. 139, In Canyon County*, 106 Idaho 152, 154, 676 P.2d 727, 729 (Ct.App.1984) (quoting *Jackson*). Applying this objective test, whether the claimant was discharged is a question of fact to be determined by the Commission. *Laundry v. Franciscan Health Care Ctr*, 125 Idaho 279, 281, 869 P.2d 1374, 1376 (1994) ("The question whether a claimant has met the

eligibility requirements of I.C. § 72–1366 is a question of fact for the Commission.").

In *Parker v. St. Maries Plywood*, 101 Idaho 415, 417, 614 P.2d 955, 957 (1980), the Court stated that the "general rule in Idaho is that an unemployment compensation benefit claimant bears the burden of proving his or her eligibility for benefits." The Court then overruled prior decisions by holding that if the claimant was discharged, the employer has the burden of proving that the discharge was for misconduct. This makes it clear that the burden of proving discharge is on the claimant. Only if the claimant proves discharge does the employer have the burden of proving misconduct.

In the present case, the Commission correctly stated the objective test for determining whether a claimant was discharged, citing *Jackson*. In reaching its decision, the Commission stated:

> From the testimony it is clear that Claimant believed that she was being terminated and that Employer was aware of Claimant's belief; Waters acknowledged that she did nothing to dispel that belief.
>
> . . . .
>
> ... We find that there were sufficient words and actions on the part of Employer to lead Claimant to believe that her employment had been terminated. In so finding, we note that Employer made no attempt to convince Claimant otherwise. Thus, we conclude that Claimant was discharged.

These statements do not indicate affirmatively that the Commission placed the burden on Johnson of proving discharge. We do not find this deficiency to be fatal, however. This Court has ruled that where

> there is ... want of detail in the minutes of the court in proceedings provided for by statute, in the absence of a statutory provision specifically requiring that such proceedings be entered upon the minutes, the law presumes that the proceedings were regular and that the statute was complied with. And the burden is upon one who asserts the law was not complied with, to

show that fact, and that he was prejudiced thereby.

*Jackson v. State,* 87 Idaho 267, 273, 392 P.2d 695, 701 (1964). Moreover, the usual presumption is that "governmental officials have complied with their obligations." *Van Heukelom v. Pine Crest Psychiatric Ctr,* 106 Idaho 898, 900, 684 P.2d 300, 302 (1984). There is nothing in the record to rebut the presumption that the Commission complied with its obligation by placing on Johnson the burden of proving discharge.

The Commission's statements about Waters doing nothing to dispel Johnson's belief and noting that ICCU made no attempt to convince Johnson that her employment had not been terminated do not indicate that the Commission placed on ICCU the burden of proving that Johnson was not discharged. They are only incidental comments concerning the evidence.

■ Our standard of review in unemployment compensation cases was recently restated: " 'This Court only reviews questions of law in an appeal from a decision of the Commission, disturbing findings of fact on appeal only where they are not supported by substantial and competent evidence.' " *Wulff v. Sun Valley Co.,* 127 Idaho 71, 74, 896 P.2d 979, 982 (1995) (quoting *Campbell v. Bonneville County Bd. of Comm'rs,* 126 Idaho 222, 225, 880 P.2d 252, 255 (1994)). There is a variation of this standard stated in *Ortiz v. Armour & Co.,* 100 Idaho 363, 364, 597 P.2d 606, 607 (1979):

The statute further indicates that the jurisdiction of this Court is limited to a review of questions of law. Under the authority of *In re Pacific Nat. Life Assur. Co.,* 70 Idaho 98, 212 P.2d 397 (1949), where the evidence is presented without substantial conflict, a question of law is presented to this Court as to whether or not it will support the conclusion reached by the Industrial Commission.

In *Ortiz,* a misconduct case, the Court noted that the evidence was not "substantially in conflict as to the basic facts (the only conflict exists in the evaluation of the seriousness of the argument between the claimant and his employer)." *Id.* In the present case, however, there is a substantial conflict in the evidence concerning the conversation between Johnson and Waters. The testimony of Johnson and Waters indicates the nuances the Commission had to consider in resolving whether Johnson was discharged or quit.

Johnson testified that during their conversation on July 13, 1993, Waters basically wanted her to look for a different job. Johnson said:

I told her that I loved my job and that I gave up everything to work there. She told me not to put that on her. At this point, I was crying uncontrollably. But when I looked up at her, she said, do you want me to let you go? I think I said, you can let me go now.

In contrast, Waters testified as follows about the same conversation:

[A]fter I'd given her the areas of improvement, Lisa did break down and had . . . had been crying for some time, and I was simply waiting for her to compose herself and then we would go on and talk about that, but, in the meantime she had . . . asked me why I had not fired her, why I didn't let her go. And, I took that to mean, are you saying you cannot make that improvement, more or less? And that's why I . . . said this statement, "Is that what you want? Do you want me to let you go?"

ICCU's attorney cross-examined Johnson as follows:

Q. Did Ms. Waters advise you that she could help you with applications for other jobs after you told her, "Why don't you let me go?"

A. I don't believe I said that to her. The only thing I . . . I remember saying is, "You can let me go now," after she had said, "Do you want me to let you go? Is that what you want?"

The Commission characterized the testimony concerning this conversation as "conflicting." In resolving this conflict, the Commission said:

Claimant testified that Waters asked her "do you want me to let you go." . . . Waters countered that Claimant had asked her "Why don't you just let me go," to

which she responded "is that what you want? Do you want me to let you go?" ... From the testimony it is clear that Claimant believed that she was being terminated and that Employer was aware of Claimant's belief. . . .

■ Given the state of the testimony which the Commission resolved, we cannot treat this as a case in which there is not substantial conflict in the evidence. Our task therefore is to determine whether there is substantial and competent evidence to support a finding of fact that there were sufficient words or actions by ICCU that would logically lead Johnson, acting as a prudent person, to believe she had been discharged. The following is the standard we employ in testing the sufficiency of the evidence: " 'Substantial and competent evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' " *Wulff*, 127 Idaho at 74, 896 P.2d at 982 (quoting from *Reiher v. American Fine Foods*, 126 Idaho 58, 60, 878 P.2d 757, 759 (1994)).

We conclude that the following substantial and competent evidence supports the Commission's finding that Johnson was discharged:

1. Johnson was not given the job of the other employee who was discharged the night before, but instead was called into an unusual meeting in Waters's office.

2. During the meeting another employee took Johnson's place. This other employee was asked to replace Johnson's cash drawer with her own.

3. It was not time for a regular evaluation of Johnson's performance.

4. Waters told Johnson that she would help Johnson with applications and interviews should Johnson look for another job.

5. During the meeting, Waters said, "Do you want me to let you go?"

Although we might not find this evidence to be sufficient to support a reasonable belief of discharge if we were the finders of fact, we conclude that a reasonable mind might accept it as adequate to support this conclusion.

Therefore, it constitutes substantial and competent evidence to support the Commission's finding that Johnson was discharged.

ICCU did not attempt to prove that Johnson was discharged for misconduct.

## III.

### I.C. § 12–121 DOES NOT AUTHORIZE AN AWARD OF ATTORNEY FEES TO JOHNSON.

■ Johnson asserts that she should be awarded attorney fees pursuant to I.C. § 12–121 (1990) because there was no reasonable basis in fact or law for ICCU to appeal the Commission's Order and Decision. We conclude that I.C. § 12–121 does not authorize an award of attorney fees in unemployment compensation cases.

In *Lowery v. Bd. of County Comm'rs*, 117 Idaho 1079, 793 P.2d 1251 (1990), the appellants appealed a county zoning commission's decision. In *Lowery*, the Court explained that the words "in any civil action" used in I.C. § 12–121 (as well as I.R.C.P. 54(e)(1)) were controlling. It went on to explain that I.R.C.P. 3(a) "clearly declares that '*a civil action is commenced by filing a complaint with the court.*' " *Id.* at 1081, 793 P.2d at 1253. Because the original action in *Lowery* was brought pursuant to I.C. §§ 67–6507 to – 6509 (dealing with zoning) and not by the filing of a complaint pursuant to I.R.C.P. 3(a), it was not a civil action. *Id.* at 1082, 793 P.2d at 1254. Because it was not a civil action, attorney fees could not be awarded pursuant to I.C. § 12–121. *Id.* See also *Swanson v. Kraft, Inc.*, 116 Idaho 315, 322, 775 P.2d 629, 636 (1989) (ruling that neither I.C. § 12–121 nor I.R.C.P. 54(e)(1) apply to workers compensation cases because such cases are not civil actions).

A claimant for unemployment benefits does not file a complaint pursuant to I.R.C.P. 3(a). Instead, I.C. § 72–1368(a) (Supp.1995) provides that "[c]laims for benefits shall be made in accordance with such rules as the director may prescribe." A claim for unemployment benefits is therefore not a civil action and attorney fees cannot be awarded pursuant to I.C. § 12–121.

## IV.

## CONCLUSION

We affirm the decision of the Commission.

We award costs on appeal, but not attorney fees, to Johnson.

McDEVITT, C.J., and TROUT and SILAK, JJ., concur.

SCHROEDER, Justice, dissenting.

This Court shows great deference to the findings of the Industrial Commission. That is a proper approach. This Court should not second guess the Industrial Commission when there is substantial and competent evidence to support its findings. However, as the Court notes, " 'Substantial and competent evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' " *Wulff,* 127 Idaho at 74, 896 P.2d at 982, quoting from *Reiher v. American Fine Foods,* 126 Idaho 58, 60, 878 P.2d 757, 759 (1994). Stretched to the maximum, the Industrial Commission's findings do not reach this standard.

The Industrial Commission reviewed the record and concluded that the claimant was discharged, contrary to the findings of the appeals examiner. It is clear that she was not discharged. She was not told she was discharged. She did not ask if she was discharged. She subjectively reached that conclusion. Her conclusion was not reasonable. The appeals examiner denied benefits on the basis that the claimant voluntarily left her employment without good cause connected with the employment. The appeals examiner summarized the evidence as follows:

> The claimant quit her job. The evidence on the record supports a conclusion that the claimant subjectively believed that she was being fired. However, the evidence does not support a conclusion that the claimant had an objective, reasonable basis to conclude that she was being fired. The claimant asserts that Ms. Waters said to her "Do you want me to let you go?". The employer disputes that this statement was made. However, even if the statement were made, it would not give the claimant

an objective reason to believe that she was being terminated.

In the course of a performance evaluation the claimant formed thoughts in her mind of her own making. She filed for unemployment benefits the same day. On the very next day the employer responded to the claim with the factual assertion that the claimant had not been terminated. Simply stated: (1) the employer did not terminate the employee; (2) when the claim was made the employer immediately responded that it had not terminated the claimant. Taking the evidence in the light most favorable to the claimant, the most that can be said is that she might reasonably conclude that if her job performance did not improve within a period of weeks she would be terminated. Words of present termination were not spoken, and the claimant was in fact given an opportunity to improve her performance.

This decision is significant in several respects. It extends a carte blanche to the Commission to decide whatever facts it wants without effective oversight. If there are relevant disputed facts that lead to a reasonable conclusion, this Court should not second guess the Commission. However, that principle should not allow the Commission to reach conclusions that are unsupported by even the most favorable reading of the facts. With the breadth of the conclusions reached by the Commission in this case employers can now be held liable for unemployment compensation and increased experienced ratings when they have not terminated an employee or created unbearable conditions that would constitute constructive discharge. The subjective, unfounded, emotional reaction of a claimant substitutes for termination. Employers must ask how they can conduct evaluations of their employees and avoid liability for unemployment compensation when the employee is offended or panics and tells the Commission, I thought I was fired.

The Commission's conclusion is not supported by substantial and competent evidence and should be reversed.