920 P.2d 915

**Antoinette REEDY, Claimant–Respondent,**

v.

**M.H. KING COMPANY, Employer–Appellant,**

and

**State of Idaho, Department of Employment, Defendant–Respondent.**

No. 21976.

Supreme Court of Idaho,
Boise, April 1996 Term.

July 25, 1996.

Parsons, Smith, Stone & Fletcher, Burley, for appellant. William A. Parsons, argued.

Frank W. Nichols, Fairfield, for respondent Antoinette Reedy.

Alan G. Lance, Attorney General; Evelyn Thomas, Deputy Attorney General, Boise, for defendant Department of Employment.

SILAK, Justice.

This is an appeal by Employer–Appellant M.H. King Company (King) from a decision of the Industrial Commission (Commission), ruling that Claimant–Respondent Antoinette Reedy (Reedy) voluntarily quit her employment with King for good cause, that Reedy is eligible for unemployment benefits, and that the account of King is chargeable for experience-rating purposes. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Reedy was employed as a sales person, floor manager, and bookkeeper at the King store in Hailey, Idaho from February 1, 1990 through April 12, 1994. Her immediate supervisor in the last months of her employment was John Salcido (Salcido), the store manager.

In November 1993, Reedy became the sexual harassment officer for King's Hailey store. As part of her duties, she was to report all incidents of sexual harassment to management and the general office. In February 1994, George Anne Renfrow (Renfrow), another employee in the Hailey store and Reedy's sister-in-law, informed Reedy of a sexually inappropriate comment made by a male employee of the store, Todd Taylor (Taylor), concerning Salcido. The comment was made in Renfrow's presence. Renfrow was apparently not overly offended by the comment.

Prior to signing a sexual harassment complaint form, Reedy contacted Sharlene Rasmussen (Rasmussen), King's sexual harassment coordinator. Reedy advised Rasmussen of the circumstances of the comment, that Renfrow did not want to file a complaint, and that the incident had been resolved in that Taylor was to be transferred to another King store. Reedy was instructed by Rasmussen to file the complaint pursuant to King's sexual harassment policy. Salcido also signed the report form.

Shortly after the complaint was filed, Reedy left for a ten day vacation. Upon her return on March 22, 1994, Salcido informed Reedy that he was issuing her a reprimand. The reprimand was based on Reedy having coerced Renfrow into filing the harassment complaint when in fact she had not been sexually harassed or offended, and for not getting along with other co-workers. Salcido specifically referred to a comment allegedly made about him by Reedy to an upper management person, David Price, concerning Salcido's performance as her supervisor. Reedy was also informed that her bookkeeping and daily bank deposit duties had been reassigned to another employee. No reduction in pay occurred. Providing a copy of King's sexual harassment policy, Reedy attempted to explain to Salcido why she filed the harassment report. Reedy asked Salcido to withdraw the reprimand as it related to the sexual harassment claim, but Salcido refused.

Reedy felt that fellow co-workers were turning against her and giving her the "cold shoulder". She believed that Salcido deliberately let the details of his written reprimand be known to staff members and that they were talking about her behind her back. Reedy suffered a great deal of stress in dealing with her job situation and saw her

health care provider. She was prescribed medication for the stress and was advised to seek a "speedy resolution of the conflict." Apparently unable to resolve the problem, Reedy resigned from her job on April 12, 1994. Her last day of work was actually April 1, 1994.

Reedy thereafter filed a Claimant/Employer Separation Statement with Respondent Idaho Department of Employment (the Department), seeking a determination that she was eligible for unemployment benefits. After King responded with its version of the events that led to Reedy's resignation, the Department found Reedy eligible to receive benefits. King appealed to the Appeals Bureau of the Department. After a hearing, the Appeals Examiner issued his decision reversing the determination of eligibility and ruling that Reedy should be denied unemployment benefits because she quit her job without good cause. Reedy then appealed to the Commission which reversed the Appeals Examiner's decision, finding that Reedy was eligible for unemployment benefits because she had shown good cause in terminating her employment with King. King appeals.

## II.

### ISSUES ON APPEAL

1. Whether the Commission fulfilled its statutory obligation under I.C. § 72–716 to make adequate findings of fact.
2. Whether the Commission made a proper application of law to the evidence.
3. Whether the Court should remand the case to the Commission to make adequate findings upon which to correctly apply the law.

Reedy raises the following additional issue on appeal:

1. Whether Reedy is entitled to attorney's fees on appeal as a matter of fundamental fairness.

## III.

### STANDARD OF REVIEW AND APPLICABLE LAW

In reviewing decisions of the Industrial Commission on appeal, this Court is limited to questions of law. Idaho Const. art. V, § 9; *Welch v. Cowles Publishing Co.,* 127 Idaho 361, 363, 900 P.2d 1372, 1374 (1995); *Hart v. Deary High School,* 126 Idaho 550, 552, 887 P.2d 1057, 1059 (1994). Where the Commission's findings of fact are supported by substantial and competent evidence, they will not be disturbed on appeal. I.C. § 72–732; *Welch,* 127 Idaho at 363, 900 P.2d at 1374. The Commission's findings must be sustained on appeal even though this Court may have reached a different conclusion where conflicting evidence is presented that is supported by substantial and competent evidence. *Id.; Spruell v. Allied Meadows Corp.,* 117 Idaho 277, 279, 787 P.2d 263, 265 (1990).

Idaho Code § 72–1366(e) provides that a claimant is ineligible for unemployment insurance benefits if he/she voluntarily terminated his/her employment without good cause connected with the employment. *Welch,* 127 Idaho at 363, 900 P.2d at 1374; *Hart,* 126 Idaho at 552, 887 P.2d at 1059. If the claimant terminated his/her employment voluntarily, the burden is on the claimant to prove that it was for good cause. *Id.* The definition of "good cause" was adopted by this Court in *Burroughs v. Employment Sec. Agency,* 86 Idaho 412, 414, 387 P.2d 473, 474 (1963):

> In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive.

Further, when an employee has viable options available, voluntary termination without exploring those options does not constitute good cause for obtaining unemployment compensation. *Ellis v. Northwest Fruit & Produce,* 103 Idaho 821, 823, 654 P.2d 914, 916 (1982). The meaning of "good cause" within I.C. § 72–1366(e) is a factual determination made on a case-by-case basis. *Ullrich v.*

*Thorpe Elec.,* 109 Idaho 820, 823, 712 P.2d 521, 524 (1985).

## IV.

## ANALYSIS

### A. The Commission Made Adequate Findings Of Fact And Such Findings Are Supported By Substantial And Competent Evidence.

■ King argues that the Commission did not fulfill its statutory obligation under I.C. § 72–716 to make adequate findings of fact. King claims that a close analysis of the findings of the Commission as compared to those of the Appeals Examiner indicates no material difference, and that the Commission simply adopted the findings of the Appeals Examiner with certain modifications. King argues that the findings are nothing more than a recitation of the testimony and then a conclusion, and that the Commission was required to weigh the conflicting testimony pursuant to *Wulff v. Sun Valley Co.,* 127 Idaho 71, 896 P.2d 979 (1995), which it failed to do. We disagree that the Commission did not make adequate findings.

This Court has remanded unemployment benefits cases to the Commission in the past for inadequate findings. *See Comegys v. Idaho Air Nat'l Guard,* 104 Idaho 767, 663 P.2d 648 (1983); *Nenoff v. Culligan Soft Water,* 95 Idaho 834, 521 P.2d 658 (1974), *appeal after remand,* 97 Idaho 243, 542 P.2d 837 (1975). In *Wulff,* the Court relied on the *Nenoff* decision to set forth the type of findings that are adequate: " 'Such findings must be definite, certain and specific, and there should be no room for misunderstanding as to whether statements are intended to be findings.' " 127 Idaho at 74, 896 P.2d at 982, *quoting Nenoff,* 95 Idaho at 836, 521 P.2d at 660.

In *Nenoff,* the Court remanded the case to the Commission because the findings did not contain a statement weighing the conflicting testimony. While the Commission could have been more specific in making its findings in the present case, we hold that they were sufficiently specific to support its ultimate conclusion that Reedy quit for good cause. Further, in its conclusions of law, the

Commission did indeed weigh the conflicting testimony. Salcido testified that he reprimanded Reedy regarding the sexual harassment report because he believed it was filed without any basis. Reedy testified that she was told to file it by management and that when she explained this to Salcido, he would not withdraw the reprimand. The Commission then made the following conclusion:

> We find the Claimant's reason for quitting arises from her job tasks. Specifically, it arises from the *unjustified* reprimand Claimant received, in violation of Employer's written policy, for filing a sexual harassment report pursuant to instructions.

(Emphasis added). Obviously, the Commission gave more weight to Reedy's testimony.

■ We further hold that the Commission's findings are supported by substantial and competent, although conflicting, evidence, and that such evidence supports the Commission's finding that Reedy voluntarily terminated her employment with King for good cause. Substantial and competent evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Idaho Cent. Credit Union,* 127 Idaho 867, 871, 908 P.2d 560, 564 (1995), *quoting Wulff,* 127 Idaho at 74, 896 P.2d at 982.

The evidence is clear that as the sexual harassment officer for King's Hailey store, Reedy was required to report any incidents of sexual harassment to management and to the general office. When an employee, Renfrow, informed Reedy of a sexually explicit comment made by a male employee, Taylor, Reedy contacted the sexual harassment coordinator at the general office. Reedy explained that Renfrow was not offended by the comment and that she did not wish to file a complaint, and that the incident had been resolved in that Taylor was to be transferred. Rasmussen nevertheless instructed Reedy to file a report to protect the company in the event there were any future incidents. Reedy, Salcido, Renfrow and Taylor all signed the report form.

The evidence is also clear that when Reedy returned from a vacation in March 1994, she

received a written reprimand from Salcido, part of which concerned her filing the sexual harassment report. Salcido testified that he issued the reprimand because when he interviewed Renfrow, he concluded that there was no complaint, that Renfrow was not offended, but that Reedy had made her sign the report. Renfrow testified that she was not offended by the comment, but was surprised. Renfrow stated that Reedy told her that Reedy was to file the report at the direction of the general office in order to protect the company. Renfrow stated that she did not feel coerced by Reedy into signing the report, but rather felt obligated to the company.

After receiving the reprimand, Reedy confronted Salcido and explained why she had filed the report, *i.e.*, that it was at Rasmussen's direction. Reedy asked Salcido to withdraw the reprimand as it related to the sexual harassment claim, but he refused. Reedy testified that the working environment at King's thereafter deteriorated. She stated that after the reprimand, whenever she tried to speak to Salcido, he would stare over the top of her head, that he reassigned some of her duties to other employees, and that some of her co-workers were hostile. She then saw her health care provider who prescribed medication for stress. Reedy testified that the stress became too much for her to handle, that she felt she could not do her job and that she had no other alternative but to quit.

Although this Court may not have found this evidence to be sufficient to support a reasonable belief that Reedy quit for good cause if we were the fact finders, we hold that a reasonable mind might accept it as adequate to support this conclusion. Thus, it constitutes substantial and competent evidence to support the Commission's finding that Reedy voluntarily quit for good cause. Reedy has demonstrated the extraneous and necessitous circumstances which compelled her to quit. *Burroughs,* 86 Idaho at 414, 387 P.2d at 474.

### B. The Commission Made A Proper Application Of Law To The Evidence.

King argues that the Commission did not make a proper application of the law to the evidence in this case and that its decision should therefore be set aside pursuant to I.C. § 72–732(4). This Court recently held that there is a presumption that the Commission complied with its obligation to follow the law. *Johnson,* 127 Idaho at 870, 908 P.2d at 563. We hold that there is nothing in the record to rebut the presumption that the Commission correctly applied the law to the evidence in finding that Reedy voluntarily quit her job for good cause.

In the present case, the facts support the Commission's conclusions of law that Reedy voluntarily quit her job for good cause. Under the *Burroughs* test, we cannot say that the circumstances leading to Reedy's departure were imaginary, trifling or whimsical. Her supervisor's actions in reprimanding Reedy were retaliatory in nature for filing the sexual harassment report. By filing the report, Reedy was only doing what the sexual harassment coordinator in the general office told her to do. Both Reedy and Renfrow testified that Renfrow was not coerced into signing the report. When Reedy explained everything to Salcido and asked him to withdraw the reprimand, he would not do so. Salcido apparently thereafter basically ignored Reedy. She then began to feel hostility from her co-workers which she believed was due to the reprimand. Her health deteriorated to the point where she sought medical advice and was prescribed medication for stress. The advice Reedy received was that her job was causing her stress related problems and that it would be in her best interest to get the situation resolved. Reedy attempted to resolve the problem with Salcido to no avail. She apparently felt that she had no other alternative than to resign. Thus, we hold that the reprimand, the lack of withdrawal of the reprimand, the subsequent reassignment of her duties and her health problems all constitute good cause.

King also argues that even though Reedy requested management to withdraw a part of the reprimand, "she did not explore *all* viable options before making the decision to quit" as was required in *Ellis v. Northwest Fruit & Produce, supra.* We find this argument to

be without merit. *Ellis* does not hold that a claimant must pursue *all* viable options. In *Ellis,* the Court held as follows:

> When an employee has viable options available to him, his voluntary termination without exploring those options does not constitute good cause for obtaining unemployment compensation.

103 Idaho at 823, 654 P.2d at 916. In *Ellis,* the claimant quit his employment one evening without first directly and specifically meeting with his employer to determine whether the problems could be worked out. The present case is distinguishable because Reedy did discuss the reprimand with her supervisor, and after explaining to him why she filed the report, he still would not withdraw it. She also demonstrated that her medical condition made it impossible for her to continue her employment with King.[1] Thus, we hold that the Commission correctly applied the law to the evidence of this case.

### C. Reedy Is Not Entitled To Attorney Fees.

 Reedy argues that she is entitled to attorney fees on appeal as a matter of fundamental fairness. She cites no authority to support this argument. In *Johnson v. Idaho Cent. Credit Union,* 127 Idaho 867, 908 P.2d 560 (1995), we held that I.C. § 12–121 does not authorize an award of attorney fees in unemployment compensation cases. *Id.* at 871, 908 P.2d at 564. The Court concluded that because a claim for unemployment benefits is not a civil action commenced by the filing of a complaint, attorney fees cannot be awarded under I.C. § 12–121. *Id.* Thus, we hold that Reedy is not entitled to fees in this case.

## V.

### CONCLUSION

We hold that the Commission's findings of fact were adequate and that they were supported by substantial and competent evidence. We further hold that the Commission correctly applied the law to the evidence in this case. Accordingly, the decision of the Commission is affirmed.

No attorney fees on appeal. Costs on appeal to respondent.

McDEVITT, C.J., and JOHNSON, TROUT and SCHROEDER, JJ., concur.

---

1. Pursuant to IDAPA 09.01.30.476.04A, if a claimant's health or physical condition makes it impossible for the claimant to continue to perform the duties of the job, the claimant will be deemed to have quit his/her employment for good cause.