963 P.2d 368

**Leovigildo MANCILLA, Claimant,**

v.

**James GREG & Jeff Pahl, dba Pahl Farms, Employer and State Insurance Fund, Surety, Defendants.**

**David G. PENA, Real Party in Interest–Appellant,**

v.

**INDUSTRIAL COMMISSION, Respondents.**

No. 23651.

Supreme Court of Idaho, Twin Falls, March 1998 Term.

June 30, 1998.

Stanley G. Cole Law Office, Rupert, for Appellant.

Alan G. Lance, Attorney General; A. Rene Martin, Deputy Attorney General, Boise, for Respondents.

SILAK, Justice.

This is an appeal by appellant David G. Pena (Pena), an attorney, from an order of the Industrial Commission (Commission) denying Pena's motion to reconsider a previous order which partially denied attorney fees requested by Pena in a workers' compensation case. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On October 12, 1993, Leovigildo Mancilla (Mancilla) suffered a work related accident while employed at Pahl Farms. Pahl Farms provided workers' compensation insurance coverage through surety State Insurance Fund (SIF). Mancilla's injury involved his right thumb being severed. At the University of Utah he underwent a successful reimplantation of the severed thumb, although Mancilla continued to experience certain physical limitations due to the injury.

In December 1993, Mancilla was released by his physician, Dr. Rockwell, to return to work at his pre-injury status. Although Mancilla was unable to perform the functions involved in his pre-injury job and was terminated by his employer, the SIF, based upon the release to return to work, terminated Mancilla's temporary total disability (TTD)

benefits. Without sufficient funds to continue with medical treatment, Mancilla decided to return to Mexico. At this point, a friend of Mancilla's urged him to retain counsel.

On February 24, 1994, Pena and Mancilla entered into a contingency fee workers' compensation claim agreement. Subsequently, Pena expressed his concern to Dr. Rockwell in Utah that Mancilla was not ready to return to work. Dr. Rockwell examined Mancilla again and reversed his previous decision to release Mancilla back to work. On April 5, 1994, Dr. Rockwell found that Mancilla had sustained a 21% permanent partial impairment (PPI) rating of the hand as a result of the injury, 19% of the upper extremity, and 11% of the whole person. Following the impairment determination and payment of $11,632.00 for that impairment, Pena negotiated a lump sum settlement in the additional amount of $12,125.00. A review of the benefits received by Mancilla is as follows: he received $18,310.14 in medical and related benefits; TTD benefits in the amount of $5,448.95; PPI benefits in the amount of $11,632.00; and an additional $12,125.00 as a lump sum settlement, for a total of $47,516.09. Pena requested the Commission's approval of $6,334.48 as attorney fees. He concedes that $21,289.44 of the total benefits were obtained prior to attorney involvement. Pena claims that the remaining $26,226.65 represents the benefits received after attorney involvement and obtained primarily and substantially as a result of Pena's efforts. Twenty-five percent of that figure equals $6,556.66, but Pena requests $222.18 less than that. In addition to submitting the proposed Lump Sum Agreement to the Commission, Pena submitted an Addendum Reporting Attorney Involvement, which itemized his attorney fee request.

The Commission approved the Lump Sum Agreement except for the provisions contained in it relating to attorney fees. The Commission questioned whether Pena primarily or substantially assisted in the recovery of Mancilla's PPI award. After a hearing on the issue of whether counsel's efforts primarily or substantially operated to secure the PPI award in the amount of $11,652.00, the Commission issued an order denying

Pena a fee from Mancilla's PPI award of $11,632.00. The Commission did approve attorney fees of 25% of $14,594.65, which was the sum of reinstated TTD benefits, future medical benefits, PPI/PPD benefits and consideration, for a fee of $3,648.66.

Pena then filed a motion for reconsideration which the Commission denied. Pena appeals, raising the issue whether the Commission erred in its order determining the amount of attorney fees to be paid to Pena in this matter.

## II.

## ANALYSIS

### A. Standard Of Review.

 It is well established that this Court's review of Industrial Commission decisions is limited to a determination of whether the Commission's findings of fact are supported by substantial and competent evidence. *Reedy v. M.H. King Co.,* 128 Idaho 896, 899, 920 P.2d 915, 918 (1996); *In re Wilson,* 128 Idaho 161, 164, 911 P.2d 754, 757 (1996). Substantial and competent evidence is more than a scintilla of proof, but less than a preponderance. *Wilson,* 128 Idaho at 164, 911 P.2d at 757. It is relevant evidence which a reasonable mind might accept to support a conclusion. *Id.* Where conflicting evidence is presented that is supported by substantial and competent evidence, the findings of the Commission must be sustained on appeal regardless of whether this Court may have reached a different conclusion. *Reedy,* 128 Idaho at 899, 920 P.2d at 918. The Court exercises free review over the Commission's conclusions of law. *Smith v. J.B. Parson Co.,* 127 Idaho 937, 941, 908 P.2d 1244, 1248 (1996); *Langley v. State,* 126 Idaho 781, 784, 890 P.2d 732, 735 (1995).

### B. Substantial And Competent Evidence Supports The Commission's Decision That Pena's Legal Services Did Not Operate Primarily Or Substantially To Secure Mancilla's PPI Award.

Idaho Code section 72–803 empowers the Industrial Commission to approve all claims for attorney fees. Pursuant to its rulemaking authority under I.C. § 72–508, and this Court's decision in *Rhodes v. Indus. Comm.,* 125 Idaho 139, 868 P.2d 467 (1993), the Commission adopted a set of criteria for the approval of attorney fees in workers' compensation cases. IDAPA 17.02.08.033. In *Rhodes,* the Court held that the Commission has the authority to administer I.C. § 72–803, and to issue regulations necessary to secure relief for injured workers and their families. 125 Idaho at 141, 868 P.2d at 469. In upholding the constitutionality of the regulation at issue in *Rhodes,* the Court concluded that "[t]he language of I.C. § 72–803 contemplates that the Commission will monitor the appropriateness of fees on behalf of claimants, and therefore the regulation provides a reasonable interpretation of the power vested by I.C. § 72–803." *Id.*

Under the present rule governing attorney fees under the Administrative Procedures Act, "reasonable" attorney fees are defined as fees which are "consistent with the fee agreement and are to be satisfied from available funds, subject to the element of reasonableness contained in IRPC 1.5." IDAPA 17.02.08.033.01.e. "Available funds" is defined as "a sum of money to which a charging lien may attach. It shall not include any compensation paid or not disputed to be owed prior to claimant's agreement to retain the attorney." IDAPA 17.02.08.033.01.a. Under section 01.c, a "charging lien" may be asserted by an attorney who is able to demonstrate that:

 i. There are compensation benefits available for distribution on equitable principles;

 ii. The services of the attorney operated primarily or substantially to secure the fund out of which the attorney seeks to be paid;

 iii. It was agreed that counsel anticipated payment from compensation funds rather than from the client;

 iv. The claim is limited to costs, fees, or other disbursements incurred in the case through which the fund was raised; and

v. There are equitable considerations that necessitate the recognition and application of the charging lien.

IDAPA 17.02.08.033.01.c.

█ In the present case, the Commission ruled that Pena failed to satisfy his burden of establishing the circumstances that justify the fee award he seeks. The basis for the Commission's determination was that Pena had not shown that his efforts "primarily or substantially" secured the PPI award for his client, Mancilla, pursuant to IDAPA 17.02.08.033.01.c.ii. We hold that substantial and competent evidence supports the Commission's decision.

Pena was hired by Mancilla on February 24, 1994. Some time after that, Dr. Rockwell reexamined Mancilla and reversed his previous decision that Mancilla was ready to return to work. On April 5, 1994, Dr. Rockwell found that Mancilla had sustained a 21% PPI rating of the hand as a result of the thumb injury, 19% of the upper extremity and 11% of the whole person. Mancilla was thereafter awarded PPI benefits of $11,632.00.

After Mancilla entered into the Lump Sum Settlement with the SIF, the Commission partially approved the agreement, but retained jurisdiction for further proceedings related to Pena's claim for attorney fees. The Commission's order specifically stated that it questioned whether Pena's efforts primarily or substantially secured the PPI award. At the hearing held in June 1996, the Commission again informed Pena of the reason it only partially approved the agreement.

The testimony of Pena at the hearing indicates that Dr. Rockwell did initiate the determination of the PPI rating, and that Pena simply agreed that it was a fair one:

In this case, did Mr. Mancilla go see a doctor and get a permanent partial impairment rating and did I argue and raise that amount? No, that didn't happen at all. Dr. Rockwell's permanent partial impairment rating was exactly what he stated primarily. I evaluated that and I thought it was a fair one. I gave advice to Mr. Mancilla. I advised him of the right that we could seek to have that reevaluated.

He made a decision at the time that the case was settled as to the direction that he wanted to go, but it was his decision.

This testimony is also significant because it supports a conclusion that however the PPI rating came into existence, the rating and amount of award were never disputed. According to IDAPA 17.02.08.033.01.a and 01.e, undisputed funds cannot be used to satisfy claims for attorney fees.

Further evidence that Pena did not primarily and substantially secure the PPI benefits is his testimony that it was "possible" his client would have received no more benefits had Pena not become involved:

... I submit to you the possibility that Mr. Mancilla, had I not been able to see him, would be in Mexico right now and would have never received one more penny other than the first few weeks of total temporary disability payments.

Here, Pena seems to suggest that because neither he nor the Commission can predict what may have happened had Pena not become involved in the case, the Commission should allow fees from all benefits, including the PPI, which were awarded after he was retained. The Commission found this argument to be speculative at best, and that an award of attorney fees upon such conjecture would be inconsistent with the requisites of attorney charging liens pursuant to the Commission's rule. IDAPA 17.02.08.033.

Additionally, during the hearing, Pena indicated that he gave valuable advice to Mancilla regarding Mancilla's medical benefits. When asked by the Commission to be more specific and provide more information with respect to the content of his conversations with Mancilla, Pena agreed to do so. The Commission thus left the matter open for three weeks for Pena to submit further information. Pena, however, submitted nothing further. Although Pena then moved for reconsideration of the Commission's order after it ruled against him, he did not file a supporting brief, and his affidavit merely stated that he "takes issue" with the Commission's findings.

Based upon a review of the entire record, we hold that there is substantial and compe-

tent evidence to support the Commission's conclusion that Pena did not primarily or substantially assist in securing the PPI award. Pena's testimony failed to state the exact steps he took in obtaining the PPI award. Thus, we hold that the Commission properly found that Pena did not primarily or substantially contribute to securing the PPI award in this case.

## III.

### CONCLUSION

We hold that substantial and competent evidence exists to support the Commission's order denying Pena's motion for reconsideration of the Commission's previous order partially denying Pena's request for attorney fees. Accordingly, the Commission's decision is affirmed. Costs on appeal are awarded to respondent Commission.

TROUT, C.J., and JOHNSON, SCHROEDER and WALTERS, JJ., concur.