2 P.3d 735

Larry Dean JOHNSON, Claimant,

v.

BOISE CASCADE CORPORATION, Self–Insured Employer, Defendant.

Raymundo G. Pena, Real Party in Interest–Appellant,

v.

Industrial Commission, Respondent.

No. 25040.

Supreme Court of Idaho,
Twin Falls, November 1999 Term.

March 17, 2000.

Rehearing Denied June 16, 2000.

Stanley G. Cole Law Office, Rupert, for appellant. Stanley G. Cole argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Blair Dee Jaynes, Deputy Attorney General, argued.

TROUT, Chief Justice.

This is an appeal from the Industrial Commission's order denying Raymundo G. Pena's (Pena) request for attorney fees to be paid from a permanent partial impairment (PPI) award received by Pena's client, Larry Dean Johnson (Johnson), in a workers' compensation case.

## I.

### BACKGROUND

Johnson was employed with Boise Cascade Corporation when he was injured in an industrial accident on July 7, 1995. In that accident, Johnson's left foot was partially amputated when it was caught between a Robocart and a conveyer belt. He had surgery on July 7, 1995, to salvage the remainder of his left foot. Then, gangrene set in and a second surgery was performed on July 19, 1995, to remove Johnson's left foot at the ankle. Subsequently, on August 7, 1995, a third surgery was performed and on August 19, 1995, a fourth surgery was necessary,

resulting in amputation of Johnson's left leg below the knee.

Pena began his representation of Johnson regarding the industrial injury on July 28, 1995. Although not signed by either party, a fee agreement dated October 4, 1995 and entitled "Agreement to Hire Attorney" was prepared entitling Pena to 25% "of any amounts recovered by whatever means" as his fee, and both Johnson and Pena concede this was their agreement.

Boise Cascade, which is self-insured for workers' compensation purposes, initially accepted liability for Johnson's injury and the first surgical procedure, but denied liability for all subsequent surgeries because of complications associated with the gangrene and alleged medical improprieties for which Boise Cascade felt it had no responsibility. At the time of the third surgery, Boise Cascade paid medical bills associated with both the first and second surgeries and Pena concedes he had no responsibility for obtaining those payments. On November 21, 1995, Pena met with representatives of Boise Cascade and demanded payment for the remainder of the medical bills associated with the third and fourth surgeries. Boise Cascade obtained outside counsel on June 4, 1996, and immediately thereafter began paying Johnson's medical bills associated with the third and fourth surgeries.

Johnson was released to return to light duty work running a computer at Boise Cascade on November 22, 1995. Johnson was re-evaluated on December 15, 1995, and was released to return to work part-time on January 11, 1996, and full-time work on February 26, 1996. On or after February 26, 1996, Dr. Newman stated that Johnson would be unable to climb, kneel, squat, crawl, or lift objects greater than 40 pounds and awarded Johnson a 28% whole man PPI rating as a result of the July 7, 1995, injury and subsequent surgeries. The PPI award conferred 140 weeks of benefits at $220.55 per week for a total award of $30,877.

Johnson and Boise Cascade entered into a Stipulation and Agreement, Release and Lump Sum Settlement, and Order of Approval and Discharge (hereinafter Settlement Agreement) on November 18, 1996. Boise Cascade agreed to pay Johnson $75,000 new money as consideration for Johnson's waiver of any rights he would have had under the Workers' Compensation Act. The $75,000 new money sum included Johnson's $30,877 PPI award.

The Industrial Commission (Commission), in an order dated December 10, 1996, approved the Settlement Agreement in part, approving the 25% contingent attorney fee for Pena's services in recovering the lump sum consideration portion of the Settlement Agreement and approving attorney costs. The Commission disapproved and retained jurisdiction over attorney fees which were to be paid from PPI funds, questioning whether Pena was entitled to assert a claim for attorney fees against the remaining money. The Commission ordered Boise Cascade's surety to pay Johnson $55,967.76.[1] The Commission further ordered the surety to pay Pena $11,336.76, representing additional attorney fees of $11,054.52 [2] and costs of $282.24. The Commission then ordered that the surety retain the remainder of the lump sum settlement, $7,695.48, pending further proceedings concerning Pena's entitlement to the PPI award as an available fund to satisfy attorney fees.

A hearing was conducted before the Commission on April 1, 1997, concerning Pena's entitlement to attorney fees to be paid from PPI funds. The Commission entered an Order Regarding Attorney's Fees on October 2, 1998, determining that Pena did not make a showing that his efforts were primarily or substantially responsible for Johnson's receipt of the PPI award. The Commission therefore denied Pena's request for a charging lien for attorney fees against the $7,695.48 balance in PPI funds. This appeal followed.

1. The $55,967.76 figure was arrived at by subtracting the total attorney fees and costs due from settlement ($19,032.24) from the $75,-000.00 new money consideration sum.

2. The $11,054.52 was arrived at by taking 25% of the lump sum consideration figure of $49,622.61 and subtracting $1,351.13 of previously paid attorney fees.

## II.

### STANDARD OF REVIEW

 This Court's review of Industrial Commission decisions is limited to a determination of whether the Commission's findings of fact are supported by substantial and competent evidence. *Reedy v. M.H. King Co.*, 128 Idaho 896, 899, 920 P.2d 915, 918 (1996). Substantial and competent evidence is more than a scintilla of proof, but less than a preponderance. *In re Wilson*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996). It is relevant evidence which a reasonable mind might accept to support a conclusion. *Id.* Where conflicting evidence is presented that is supported by substantial and competent evidence, the findings of the Commission must be sustained on appeal regardless of whether this Court may have reached a different conclusion. *Reedy*, 128 Idaho at 899, 920 P.2d at 918.

## III.

### SUBSTANTIAL AND COMPETENT EVIDENCE SUPPORTS THE COMMISSION'S DETERMINATION

Idaho Code § 72–803 grants the Industrial Commission authority to approve all claims for attorney fees. The rule governing approval of attorney fees in workers' compensation cases defines "reasonable" attorney fees as fees which are "consistent with the fee agreement and are to be satisfied from available funds, subject to the element of reasonableness contained in IRPC 1.5." IDAPA 17.02.08.033.01.e. "Available funds" is defined as "a sum of money to which a charging lien may attach. It shall not include any compensation paid or not disputed to be owed prior to claimant's agreement to retain the attorney." IDAPA 17.02.08.033.01.a. Section 01.c provides that a charging lien may be asserted by an attorney who is able to demonstrate that, among other things, "[T]he services of the attorney operated primarily or substantially to secure the fund out of which the attorney seeks to be paid."

We recently examined the Commission's denial of attorney fees involving a PPI award in *Mancilla v. Greg*, 131 Idaho 685,

963 P.2d 368 (1998). Mancilla was involved in an industrial accident and entered a contingency fee workers' compensation claim agreement with attorney David G. Pena. Mancilla was awarded a 21% permanent partial impairment (PPI) of the hand, a 19% PPI of the upper extremity, and an 11% PPI of the whole person. Pena negotiated a Lump Sum Agreement following the PPI determination and Mancilla received benefits totaling $47,516.09. Pena argued that $26,226.65 represented benefits received after attorney involvement and therefore requested the Commission approve 25% of $26,226.65 less $222.18, totaling $6,334.48. The Commission approved the Lump Sum Agreement except for the attorney fees provisions and questioned whether Pena "primarily or substantially assisted in the recovery of Mancilla's PPI award." After a hearing concerning whether Pena's efforts primarily or substantially operated to secure the PPI award, the Commission issued an order denying Pena a fee from Mancilla's PPI award and approving attorney fees of 25% of other benefits. On appeal, we noted that Mancilla's doctor initiated the PPI determination and that Pena simply agreed that the determination was fair. We further noted that the PPI rating and amount of award were never disputed and thus could not be used to satisfy claims for attorney fees under IDAPA 17.02.08.033.01.a and .01e. We therefore upheld the Commission's determination that Pena did not primarily or substantially assist in securing the PPI award. *Mancilla*, 131 Idaho at 688–89, 963 P.2d at 371–72.

 The facts in the present case bear some similarity to those in *Mancilla*. Here, the PPI determination was initiated by Johnson's physician and it was not in dispute. Pena argues that Boise Cascade initially refused responsibility for the entire PPI award and that only through Pena's efforts did Boise Cascade pay the full PPI award. In support of this argument, Pena offers that he met with representatives of Boise Cascade on November 21, 1995, and demanded payment of medical bills and that his efforts continued through December 1995, and January 1996. Pena acknowledged at the Commission hearing, however, that shortly after

he was retained, Boise Cascade paid medical bills associated with both the first and second surgeries and that he claims no responsibility for those payments. He also acknowledged in his testimony that the November 21, 1995, meeting and his subsequent efforts were focused on making Boise Cascade take responsibility for the third and fourth surgeries. He further agreed that there was nothing in the record supporting an absolute denial by Boise Cascade of liability for all of the surgeries; they merely continued to question the medical bills. Pena acknowledged that Boise Cascade's position changed regarding payment of medical expenses when outside counsel became involved and that Boise Cascade began to pay Johnson's medical bills one day later. All of this testimony supports the conclusion that any work Pena did was directed at encouraging Boise Cascade to accept full responsibility for the medical bills related to the two later surgeries, which they questioned but fully accepted immediately after consulting with outside counsel, not as a result of anything Pena did.

Moreover, Johnson's PPI award was statutorily determined under I.C. § 72–428(2). Section 72–428(2) provides, and the Commission so found, that Johnson's PPI award would have been the same 28% award after the second surgery on July 19, 1995, as it was after the fourth surgery on August 19, 1995. Thus, it was reasonable for the Commission to conclude that Johnson would have received the same 28% PPI award regardless of Pena's involvement after the second surgery. While Pena may have contributed in some part to Boise Cascade's decision to acknowledge responsibility for impairment resulting from the third and fourth surgeries, the impairment rating was not increased as a result. We therefore hold that substantial and competent evidence supports the Commission's determination that Pena was not primarily or substantially responsible for securing Johnson's PPI award.

## IV.

### ATTORNEY FEES

Pena requested attorney fees on appeal, but is not the prevailing party and is, therefore, not entitled to an award.

## V.

### CONCLUSION

The Industrial Commission's order denying Pena's request for attorney fees to be paid from Johnson's PPI award is hereby affirmed.

Justices SILAK, SCHROEDER, WALTERS, and KIDWELL concur.