# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38037

SEINIGER LAW OFFICES, P.A., )
)    **Boise, January 2013 Term**
    **Real Party in Interest-Appellant,** )
)    **2013 Opinion No. 21**
v. )
)    **Filed: February 22, 2013**
STATE OF IDAHO, ex rel., INDUSTRIAL )
COMMISSION, )    **Stephen W. Kenyon, Clerk**
)
    **Intervenor-Respondent.** )
)
)

Appeal from the Industrial Commission of the State of Idaho.

The orders of the Industrial Commission are <u>affirmed</u>.

William B. Seiniger, Jr., Seiniger Law Offices, P.A.; Boise, argued for appellant.

Blair D. Jaynes, Idaho Deputy Attorney General, Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Ada County challenging the administrative rule adopted by the Industrial Commission in 1994 that regulates the amount of attorney fees allowable for attorneys representing claimants in worker's compensation proceedings. We uphold the validity of the rule.

## I.
## Factual Background.

The Idaho Industrial Commission (Commission) adopted an administrative rule that took effect on July 1, 1994, and that regulated the amount of fees that an attorney could recover from a claimant in a worker's compensation proceeding. IDAPA 17.02.08.033 (1994). Seiniger Law Offices, P.A., (Seiniger) challenges the part of the rule stating that to recover a contingent fee

from a particular sum of money paid to the claimant, the attorney must prove that "[t]he services of the attorney operated primarily or substantially to secure the fund out of which the attorney seeks to be paid." IDAPA 17.02.08.033.01.c.ii & 03.d (1994).

The rule, which was in effect from July 1, 1994, through April 6, 2011, provided that in worker's compensation cases in which no hearing on the merits was held, a reasonable attorney fee is presumed to be "twenty-five percent (25%) of available funds." IDAPA 17.02.08.033.01.e.i (1994). For money received by the client to be considered available funds, the attorney was required to demonstrate, among other things, that "[t]he services of the attorney operated primarily or substantially to secure the fund out of which the attorney seeks to be paid." IDAPA 17.02.08.033.01.c.ii (1994).[1]

To obtain approval of a fee, an attorney was required to submit specified information to the Commission for review by its staff. 17.02.08.033.02 (1994). The staff would then issue an informal determination as to the reasonableness of the claimed fee, and it was required to state the reasons for a determination that the fee was not reasonable, which could be lack of required information. 17.02.08.033.03.a (1994). An attorney who disagreed with the staff's informal determination could request a hearing before the Commission for the purpose of presenting evidence and argument. 17.02.08.033.03.b (1994). At the hearing, the attorney had the burden of proving by a preponderance of the evidence that the claimed fee was reasonable. 17.02.08.033.03.d (1994). If the attorney claimed a contingent fee greater than the percentage presumed reasonable in the rule, then the attorney had the burden of proving by clear and convincing evidence entitlement to such greater percentage. *Id*.

In 2005, 2007, and 2008 respectively, three claimants retained counsel in the Seiniger law firm to represent them in worker's compensation proceedings. In each case, the claimant signed a fee agreement agreeing to pay Seiniger "[t]wenty-five percent (25%) of all amounts obtained for Client after execution of this agreement if the case is settled before a hearing." The fee agreement provided that the 25% contingent fee applied to "all amounts obtained for Client after execution" of the fee agreement rather than 25% of "available funds" as defined by the administrative rule.

---

[1] Although the 1994 rule is no longer in force, the current rule contains a provision identical to that challenged here. IDAPA 17.02.08.033.01.c.ii.

Each of the three cases was settled without a hearing. In the first case to be settled, Seiniger requested that the Commission approve the lump sum settlement agreement and Seiniger's requested contingent attorney fee. That fee included money already received by Seiniger amounting to 25% of the funds that the surety had paid prior to the settlement for the claimant's permanent partial impairment (PPI) benefit. The attorney fee agreement signed by the client included the statement, "Attorney will take a percentage of any benefits obtained by Client with respect to permanent partial impairment if a rating is given after the parties execute this agreement." In support of the requested award of attorney fees, Seiniger stated:

> Before Counsel was retained, Defendants denied, discontinued, or disputed Claimant's right to additional medical benefits and treatment, time loss benefits, and impairment compensation, and disability beyond impairment, and retraining, and attorney fees. Subsequent to retaining Counsel, Claimant received additional medical treatment and time loss benefits and impairment compensation and disability beyond impairment compensation.

The Commission staff made an informal determination that the claimed attorney fees did not comply with the Commission's rule because Seiniger did not provide facts showing that Seiniger's services primarily or substantially secured the funds out of which it sought to be paid. Seiniger requested a hearing pursuant to the rule.[2] The Commission scheduled a hearing to determine whether Seiniger's efforts were primarily or substantially responsible for securing the PPI award and the permanent partial disability (PPD) award.

After the hearing, the Commission found that the PPD award was secured both primarily and substantially as a result of Seiniger's efforts. It therefore affirmed payment of 25% of that award to Seiniger as a contingent fee.

With respect to the PPI award, Seiniger primarily challenged the validity of the rule requiring that its services primarily or substantially operated to secure that fund. In post-hearing briefing, Seiniger stipulated "that its attorneys were not 'primarily or substantially' responsible for securing the PPI benefit involved – whatever 'primarily or substantially' may mean in the context of defining 'available funds' as those terms are used in the relevant IDAPA rules."

---

[2] The rule provides, "If counsel disagrees with the Commission staff's informal determination, counsel may file, within fourteen (14) days of the date of the determination, a Request for Hearing for the purpose of presenting evidence and argument on the matter." IDAPA 17.02.08.033.03.b.

Nevertheless, in its decision the Commission also examined the record to determine if the evidence showed that Seiniger's efforts were primarily or substantially responsible for securing the PPI award. In doing so, the Commission construed this requirement as follows:

> In summary, in order to meet his burden of proving that his efforts were "primarily or substantially" responsible for securing the fund from which he hopes to be paid, Counsel bears the burden of proving, by a preponderance of the evidence, that he originally, or initially, took action that secured the fund, or that his efforts essentially, or in the main were responsible for securing the fund, i.e. that his efforts were such that a reasonable person would conclude that he was responsible for securing the fund from which he hopes to be paid.

The Commission then addressed whether the evidence showed that Seiniger's efforts were primarily or substantially responsible for securing the PPI award. The claimant had retained Seiniger's services on May 30, 2007, and it referred her to an osteopathic physician who saw her on June 7, 2007. He proposed that the claimant was entitled to a PPI rating of 12%, even though the claimant was still receiving treatment. The surety did not accept that rating. On November 7, 2007, one of the claimant's treating physicians determined that the claimant was medically stable and awarded her a 5% PPI rating. The surety had asked the treating physician to provide a PPI rating. Seiniger contended that the surety may have been prompted to do so because of the PPI rating obtained from the osteopathic physician, but the Commission found that such argument was merely speculation unsupported by evidence. The Commission determined that the evidence did not show that Seiniger "originated or initiated the creation of the PPI award" or that its actions "essentially, in the main, or reasonably, could be said to have secured the payment of the PPI award." The Commission therefore held that Seiniger was not entitled to 25% of that award as a reasonable attorney fee. We are not asked on this appeal to review this finding because Seiniger stipulated that the services of its attorneys were not primarily or substantially responsible for securing the PPI award.

In the other two cases, Seiniger admitted that it could not prove that its attorneys were primarily or substantially responsible for securing the claimants' PPI benefits or that such benefits were disputed by the defendants in those cases. The three cases were consolidated, and Seiniger filed a notice of appeal as the real party in interest in order to challenge the Commission's rule. The Commission intervened in each case as the respondent on appeal. The employer and surety in each case did not participate in the appeal. For the purposes of the

4

appeal, Seiniger admitted that it cannot prove that its attorneys were "primarily or substantially" responsible for securing the PPI benefit for each of the three claimants.

## II.
### Did the Rule Regulating Attorney Fees
### Exceed the Commission's Authority?

Idaho Code section 3-205 provides, "The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law." Seiniger argues that this statute prohibits the Commission from regulating the amount that an attorney can receive as fees in a worker's compensation case. According to Seiniger, the amount of fees should be left entirely to the agreement between the attorney and the attorney's client.

The statute allows any measure of compensation agreed to between the attorney and client that "is not restrained by law." The measure of compensation for attorneys in worker's compensation cases is restrained by law. By enacting Idaho Code section 72-803, the legislature granted the Commission the authority to "approve" the fees for attorneys who represent claimants in worker's compensation proceedings. *Rhodes v. Indus. Comm'n*, 125 Idaho 139, 141, 868 P.2d 467, 469 (1993). "[T]he word 'approve' is sufficient to establish the proper delegation of the power to regulate attorney fees." *Id*. at 142, 868 P.2d at 470. The legislature has also granted the Commission the authority to promulgate reasonable rules and regulations for effecting the purposes of the Worker's Compensation Law. I.C. § 72-508. Therefore, section 3-205 does not limit the Commission's authority to adopt administrative rules that regulate the amount that it determines to be a reasonable attorney fee in worker's compensation proceedings.

## III.
### In Adopting the Rule, Did the Commission Violate the Idaho Constitution
### by Exercising Legislative Power?

Seiniger argues that by adopting the rule at issue, the Commission in effect repealed Idaho Code section 3-205. It argues, "Appellant is not aware of any authority for the proposition that the adoption of I. C. §72-803 providing for the approval of attorney's fees impliedly repealed the I. C. § 3-205 express and unequivocal prohibition against limiting the freedom to contract of an attorney and client." It then argues that if the legislature did not impliedly repeal

section 3-205 by the enactment of section 72-803, it could not delegate to the Commission power to do so.  Therefore, Seiniger contends that the rule is either void as exceeding the Commission's power to repeal section 3-205 or void as an unlawful delegation of legislative power to the Commission.  Seiniger summarizes its argument as follows:

> **The bottom line is this:**  There are only two logical possibilities.  Either the Idaho Legislature <u>did not delegate</u> the power to repeal I. C. § 3-205's statutory protection of the very rights that Appellant also contends enjoy some constitutional protection ("The measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties, which is not restrained by law."), or <u>it did delegate</u> that power to the IIC [Commission].  If the Legislature did not delegate such authority, the regulation is void as going beyond the IIC's [Commission's] statutory authority.  If it did delegate such authority, that delegation was unconstitutional under the doctrine of separation of powers.

"Repeal by implication occurs when 'two statutes are inconsistent and irreconcilable.' " *Callies v. O'Neal*, 147 Idaho 841, 847, 216 P.3d 130, 136 (2009).  As explained above, section 72-803 granting the Commission the power to regulate attorney fees in worker's compensation cases does not conflict with section 3-205.  The latter statute permits the measure and mode of compensation set forth in an attorney fee agreement to be "restrained by law," which is what the legislature did by enacting section 72-803 to give the Commission the authority to regulate the amount of attorney fees in worker's compensation cases.  By adopting rules to implement that statute, the Commission was not repealing section 3-205.

### IV.
### In Adopting the Rule, Did the Commission Violate the Idaho Constitution by Exercising Judicial Power?

Seiniger contends that the rule regulating the amount of attorney fees in worker's compensation cases infringes upon the powers of the judiciary.  That argument is inconsistent with our prior decisions in this area.

In 1992, the Commission for the first time adopted a rule to regulate the amount that attorneys could charge a claimant for providing legal services in a worker's compensation proceeding.  IDAPA 17.01.01.803.D (1992).  The rule provided that after its effective date, "any contingent fee agreement between counsel and a claimant in a workers' compensation case shall provide that the amount of attorney fees will not exceed 25% of any new money received by the

6

claimant." IDAPA 17.01.01.803.D.4 (1992). "New money" was defined as "monetary benefits to the claimant that counsel is responsible for securing through legal services rendered in connection with the client's workers' compensation claim." IDAPA 17.01.01.803.D.3 (1992). The rule also provided that the Commission could, after a hearing or on its own motion, award a greater amount of fees "up to 30% of new money awarded." IDAPA 17.01.01.803.D.4.a (1992).

Before the rule was to take effect, Kathryn Marie Rhodes and others petitioned this Court for a writ of prohibition to prevent the Commission from implementing the rule. This Court granted a temporary stay and solicited briefing from Rhodes and the Commission.

Rhodes claimed that "the regulations prejudiced the ability of injured employees to obtain legal counsel," and she provided "communications in which attorneys declined to represent injured workers due to the fee cap." *Rhodes*, 125 Idaho at 140, 868 P.2d at 468. We noted that the Commission "has original and exclusive jurisdiction over issues concerning attorney fees in workers' compensation cases." *Id.* at 141, 868 P.2d at 469. However, we also stated that "the judicial department of the government is uniquely imbued with the power to regulate the practice of law" and that "[a]ny authority exercised by the other departments of government that affects the practice of law must not conflict with judicial resolution." *Id*. We held that the rule did not conflict with judicial power, stating as follows:

> The authority granted to the Commission under § 72-803, to "approve" attorney fees, does not conflict with the judicial penumbra. The regulation under challenge, promulgated to foster ease, utility, and predictability in the application of I.C. § 72-803, in turn does not overstep the legislative bounds of I.C. § 72-803, read in *pari materia* with the entire Workers' Compensation Act.

*Id*. We also held that the regulation was a reasonable interpretation of the power vested in the Commission by Idaho Code section 72-803 to "monitor the appropriateness of fees on behalf of claimants." *Id*.

Seiniger states that the 1994 rule infringes upon judicial power "because it limits compensation to 'disputed' matters and thereby regulates not just fees but effectively the areas of law that an attorney may practice." The rule required an attorney seeking approval of attorney fees in connection with a lump sum settlement to provide the Commission with: (a) "The date upon which the attorney became involved in the matter"; (b) "Any issues which were undisputed at the time the attorney became involved"; (c) "The total dollar value of all compensation paid or admitted as owed by employer immediately prior to the attorney's involvement"; (d) "Disputed

7

issues that arose subsequent to the date the attorney was hired"; (e) "Counsel's itemization of compensation that constitutes available funds; (f) "Counsel's itemization of costs and calculation of fees"; and (g) "The statement of the attorney identifying with reasonable detail his or her fulfillment of each element of the charging lien."[3] IDAPA 17.02.08.033.02 (1994). Limiting the calculation of compensation to those matters that were disputed does not limit the areas in which an attorney may practice.

In worker's compensation cases, the claimant's recovery is typically categorized into types of benefits, such as medical expenses, temporary disability, permanent impairment, and permanent disability (disability in excess of impairment). Because those benefits are determined separately, the claimant's recovery for each type of benefit is an identifiable sum of money. For example, in the first of the three cases that was settled in this appeal, the lump sum settlement provided that the claimant was to be compensated $12,651.99 for medical expenses; $7,768.75 for permanent impairment; $6,215.00 for permanent partial disability; and $12,223.13 for lump sum consideration.

For the purposes of calculating a reasonable attorney fee under the rule, the issues that would be disputed or undisputed are those related to the recovery of each type of benefits. Those issues vary from case to case. For example, in the first case to settle of the three cases involved in this appeal, the claimant was not awarded benefits for temporary disability, but the claimants in the second and third cases to settle were.

Litigating an impairment rating in worker's compensation cases is not an area of legal practice. It is an issue that may arise when representing a client in a worker's compensation proceeding, which is an area of practice. Thus, the rule does not limit the areas in which attorneys can practice. It only regulates what is a reasonable fee for representing claimants in worker's compensation cases.

Seiniger also argues that the rule infringes upon judicial power because the Commission seeks to determine the categories of services for which an attorney can be compensated. Seiniger states, "Only the Judiciary can determine what constitutes the practice of law, and concomitantly for what services a lawyer acting always as an officer of the Court can charge a reasonable fee."

---

[3] A "charging lien" is the attorney-fee lien against the claimant's right to compensation under the worker's compensation law. IDAPA 17.02.08.033.01.c (1994). A request for approval of attorney fees was a request for approval of a charging lien. IDAPA 17.02.08.033.02.a (1994).

8

A contingent fee compensates an attorney for a variety of activities that are intended to obtain a recovery for the attorney's client. Each of those activities, in and of itself, does not generate a monetary award for the client. The hope is that the combination of the services rendered will generate such award. Because the attorney is not paid based upon an hourly fee, the amount that the attorney will receive for each hour spent working on contingent fee cases will vary depending upon the total hours worked and the amount of the contingent fee in each case.

Seiniger admits that the Commission has the authority, as we have held, to determine what is a reasonable contingent attorney fee for representing claimants in worker's compensation cases. The issue is whether a reasonable attorney fee should include a portion of the claimant's monies that the attorney's services did not secure. For example, should the attorney be entitled to a portion of the monies that were paid to the claimant before the attorney was retained? Most people would probably answer, "No," because the attorney clearly could not have been instrumental in securing those funds. But, how is that any different from the attorney obtaining a portion of a specific fund paid to the client after he or she was retained where the attorney's services were not primarily or substantially responsible for obtaining those monies? In both examples, the monies were obtained independent of the attorney's services. The only difference is that monies obtained before the attorney was retained were clearly not the result of the attorney's services while monies obtained after the attorney was retained could have been, depending upon the facts. Here, Seiniger has stipulated that the funds at issue were not primarily or substantially secured by its services. Thus, we are not presented with the issue of what an attorney must establish in order to show that the attorney's services were primarily or substantially responsible for securing a particular fund.

As mentioned above, the rule at issue in *Rhodes* provided that after the rule's effective date, a contingent fee agreement in worker's compensation cases "shall provide that the amount of attorney fees will not exceed 25% of any new money received by the claimant," IDAPA 17.01.01.803.D.4 (1992), and it defined "new money" as "monetary benefits to the claimant that counsel is responsible for securing through legal services rendered in connection with the client's workers' compensation claim," IDAPA 17.01.01.803.D.3 (1992). Under that rule, an attorney was not entitled to a contingent fee based upon all sums obtained by the client. We held that the rule "provides a reasonable interpretation of the power vested by I.C. § 72-803," and that the rule

9

did not infringe upon this Court's power to regulate the practice of law. *Rhodes,* 125 Idaho at 141, 868 P.2d at 469.

In *Johnson v. Boise Cascade Corp.*, 134 Idaho 350, 2 P.3d 735 (2000), and in *Mancilla v. Greg*, 131 Idaho 685, 963 P.2d 368 (1998), we upheld the Commission's ruling under the 1994 rule that a reasonable attorney fee did not include a portion of the money received by a claimant for a PPI award where the attorney's services were not primarily or substantially responsible for securing that award. The requirement that an attorney show that the attorney's services operated primarily or substantially to secure the fund from which the attorney seeks a contingent fee does not infringe upon judicial authority.

## V.
### Does the Administrative Rule Violate the Free Speech Rights of Seiniger or Its Clients?

Seiniger contends that the free speech rights of attorneys and clients are infringed by the Commission's rule limiting attorney fees to a percentage of the claimant's recovery that was primarily or substantially obtained through the attorney's services. Seiniger argues that if attorneys have a First Amendment right to advertise, *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977), then they have the constitutional right "to be paid for legal advice actually given once the lawyer is retained and representation commenced." It also argues that the rule infringes upon an attorney's "right to give the advice and his clients' rights to receive that advice," so that the free speech rights of both the attorney and the client are infringed.

The rule on its face clearly does not prevent an attorney from giving advice to a client, nor does it prevent the client from receiving such advice. The rule does not purport to impose any limits at all upon the communications between an attorney and that attorney's client. Likewise, there is nothing indicating that the rule somehow prevented Seiniger's attorneys from advising their clients in these cases.

What the rule does is require that attorney fee contracts in worker's compensation cases be contingent fee contracts rather than hourly contracts. It also establishes what the Commission presumes to be a reasonable contingent fee. Seiniger does not argue that requiring a contingent fee contract in worker's compensation cases infringes upon the freedom of speech. It does not contend that any attorney should be permitted to charge an hourly fee in worker's compensation

10

cases so that the attorney can be paid even if the claimant does not receive benefits. Seiniger only challenges how the contingent fee is calculated, specifically the requirement that the attorney demonstrate that "[t]he services of the attorney operated primarily or substantially to secure the fund out of which the attorney seeks to be paid." IDAPA 17.02.08.033.01.c.ii. Thus, the challenged rule did not prevent Seiniger from being paid for legal advice provided to the claimants in these three cases. It only limited the amount that it would be paid. Seiniger has not shown that the challenged rule infringed upon its free speech rights or those of its clients.

## VI.
### Does the Administrative Rule Violate Seiniger's
### Right to Liberty Under the Fourteenth Amendment?

Seiniger contends that the rule deprives it of liberty without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and Article 1, section 13, of the Constitution of the State of Idaho. It quotes from *Curr v. Curr*, 124 Idaho 686, 864 P.2d 132 (1993), that "the right to follow a recognized and useful occupation is protected by a constitutional guarantee of liberty under the Fourteenth Amendment to the U.S. Constitution and Idaho Const. art. 1, § 13." *Id*. at 692, 864 P.2d at 138. It then states that the rule unconstitutionally infringes "the liberty interest of the attorney to enter into a contract pursuant to I. C. § 3-205."

In support of that argument, it quotes from *Curr* as follows:

Specifically, the Commission's current stance, as Seiniger aptly points out, fails to compensate an attorney for acting solely as a counselor and fails to recognize efforts that do not generate monetary awards such as obtaining permission for medical care or procuring an impairment rating. Moreover, the Commission's arbitrary actions made suspect appellants' integrity in the eyes of their clients, thereby seriously undermining the attorney-client relationship. Finally, the "new money" provision preempts representation other than in disputed matters once again contravening I.C. § 72–508.

*Id*.

Seiniger asserts, "Contrary to the interpretation given *Curr* by the IIC [Commission], the analysis in *Curr* is not limited to the procedural infirmities of the IIC's *sua sponte* reduction of attorney's fees." Seiniger contends that three statements from the above quotation are constitutional restrictions upon the power of the Commission. These alleged constitutional

11

restrictions are that the Commission does not have the power:  (a) to "fail to compensate an attorney for acting solely as a counselor"; (b) to "fail to recognize efforts that do not generate monetary awards such as obtaining permission for medical care or procuring an impairment rating"; and (c) to "[preempt] representation other than in disputed matters [in contravention of] I.C. § 72-508. "  According to Seiniger, "the clear implication of *Curr*" is that the Commission could not do these three things because "doing so violated the right to follow a recognized and useful occupation as protected by a constitutional guarantee of liberty under the Fourteenth Amendment to the U.S. Constitution and Idaho Const. art. 1, § 13."  Seiniger misreads the *Curr* opinion.

*Curr* involved the appeals by attorneys in four consolidated cases.  The statements from *Curr* quoted by Seiniger were made in relation to the appeal by attorney Ronald L. Swafford.  His fee agreement provided that he would receive 25% of any award if the matter was resolved without litigation.  Without having adopted any rule regulating attorney fees, without notice to Swafford, and without offering him a hearing, the Commission reduced Swafford's contingent fee because there was no indication that the PPI award was due to his efforts.  *Id*. at 688, 864 P.2d at 134.

The issue being addressed in this portion of the *Curr* opinion was procedural due process. The Court began its analysis by stating, "In order to justifiably modify attorney fee agreements in the interest of public welfare, the Commission must afford due process to the contracting parties, i.e., notice and an opportunity to be heard at a meaningful time."  *Id*. at 692, 864 P.2d at 138. After discussing the relevant requirements of notice and a meaningful hearing, the Court then made the statement quoted by Seiniger.  However, Seiniger omitted the first and last sentences of the paragraph in which that quotation occurred.  The first sentence was, "In *sua sponte* reducing appellants' uncontested attorney fee agreements without the suitable advance notice to all of the parties directly involved, accomplished through properly enacted regulations, and without a meaningful hearing, the Commission has acted in disregard of important constitutional mandates."  *Id*.  The last sentence was, "The net result of the Commission's *sua sponte* conduct is a deprivation of appellants' property rights under the fee agreement without due process of law."  *Id*.

The quoted statements upon which Seiniger relies were not constitutional limitations on the power of the Commission. They were instead showing Swafford's property rights in the fee agreement that were taken without procedural due process.

In this case, the challenged rule was in effect prior to the execution of the fee agreements in these three cases, and Seiniger was given notice and an opportunity for a hearing before the Commission ruled as to the reasonableness of the attorney fees claimed. Although Seiniger certainly has a right to enter into a contract pursuant to Idaho Code section 3-205, the terms of that contract can be, and in this case are, restrained by law.

## VI.
## Conclusion.

We affirm the orders of the Industrial Commission, and we award respondent costs on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**